STATE v. HAROLD DILL.

(*November* 29, 1944.)

LAYTON, C. J., RICHARDS and TERRY, J. J., sitting.

*Clair J. Killoran,* Attorney-General, *Thomas Herlihy, Jr.,* and *Vincent A. Theisen,* Deputy Attorneys-General, for the State.

*Ivan Culbertson* for the defendant.

Court of Oyer and Terminer for New Castle County, Indictment for rape, November Term, 1944.

LAYTON, Chief Justice, charging the Jury:

Gentlemen of the Jury:

Harold Dill, the accused, is charged in the indictment before you with the rape of Martha E. Hudson.

The State has offered evidence tending to show that late at night, May 13, 1944, the prosecuting witness, her husband, and their two children were returning to their home by automobile, and at or about the Turf tavern located on the dual highway leading from Wilmington to Elkton, Maryland, their automobile was stalled for want of gasoline. The husband started to walk to his home to get gasoline, leaving his wife and children in the car, and some time thereafter, the defendant induced Mrs. Hudson to let him take her in his automobile for the purpose of overtaking her husband along the road. The defendant, however, drove his car off the highway into a private lane about three tenths of a mile from the tavern, and when the car was stopped, Mrs. Hudson, having become suspicious, got out of the car and attempted to flee, but was overtaken by the defendant; and on the grass plot between the two highway lanes, despite her outcries and prolonged resistance, the defendant had carnal connection with her forcibly and against her will. After his purpose had been accomplished, the defendant allowed Mrs. Hudson to go, having exacted a promise not to tell of the occurrence. She returned to the car, and upon her hus-

band's return, related to him the events and later made complaint to the police.

██ The crime charged is rape. Rape is sexual intercourse accomplished by force and against the will of the woman. The burden is upon the State to prove to your satisfaction beyond a reasonable doubt that the defendant did, in fact, have carnal connection with Martha Hudson, and that it was had against her will, either by force or by putting her in fear and terror.

██ Essential to carnal knowledge is the fact of penetration. Full penetration of the male organ into the female organ need not be shown. Any penetration, however slight, is sufficient; but it must be shown beyond a reasonable doubt that the male organ of the man did actually enter into the lips of the female organ of the woman, that is to say, into the labia of the pudendum. It is not necessary to prove an emission of semen.

██ Force, actual or constructive, is an essential element of the crime of rape. But no particular amount of force is necessary to constitute the crime; neither is it essential that actual force be used to overcome the will of the woman. Force may exist without actual violence. If the acts and conduct of the person charged with the crime are sufficient reasonably to create in the mind of the woman, having regard for the circumstances in which she is placed, a real apprehension of dangerous consequences, or great bodily harm, so that her will is, in fact, overcome, such acts and conduct are equivalent to force actually exerted for the same purpose.

██ When it is shown that the sexual connection was had against the consent of the woman, the law implies force. Whether force was used very generally depends upon whether the woman consented to the act; and you must be satisfied beyond a reasonable doubt that the alleged carnal

connection was had against the consent of Mrs. Hudson. Consent to the act, however reluctant, given at any time prior to penetration deprives the subsequent intercourse of its criminal character; but you will keep in mind that there is a wide difference between consent or assent to the act, and submission to the act. Consent may, of course, involve submission, but submission merely does not necessarily imply consent; and submission to compelling force, or as a result of being put in fear and terror, is not consent.

As showing consent, or want of consent, the nature and extent of the resistance offered by the woman is a most important consideration. Generally if the woman assaulted is physically and mentally able to resist, is not terrified by threats, nor in a place and position that resistance would have been useless, it must be shown that she did, in fact, resist the assault made upon her person. In the absence of fear and terror induced by force or threats of force, or of other circumstances which would make resistance unnecessary, as where the futility of resistance is reasonably apparent, an entire want of mental assent or consent on the part of the prosecutrix must be shown. Resistance, however, is relative; and the amount of resistance required to negative consent depends on the circumstances of the particular case; and there is frequently presented the question whether the woman ultimately consented to the intercourse, or refrained from resistance, or ceased to resist, because it was useless or dangerous. Generally, the resistance offered by the woman must be reasonably proportionate to her strength and opportunities. In the absence of excusing circumstances it must be shown that the woman did resent the attack made upon her in good faith and without pretense, with an active determination to prevent the violation of her person, and was not merely passive and perfunctory in her resistance. It is not necessary that the woman use in opposition to the assault all of the physical force of which, in the estimation of the jury, she was capable. It is sufficient

if her acts and conduct show a want of consent made manifest by actual, unfeigned resistance resolutely maintained until penetration has been accomplished.

Again, as bearing on the question of consent, is whether the person assaulted called for help or made other outcry, especially where help may reasonably be expected. Marks of violence upon the person of the woman, the condition of her clothing, and whether she made prompt complaint of the alleged outrage to those to whom she would naturally complain are facts to be considered.

You will, therefore, consider carefully the age and mental condition of the prosecutrix and her size and strength as compared to that of the accused, the testimony relating to the nature and extent of the resistance made by her, the place where the alleged assault took place, the proximity of persons or passers-by, calls for help or other outcry, the condition of her clothing, marks of violence on her person, if any, and that she made prompt complaint to her husband and to the police.

The accused neither admits nor denies that he had sexual intercourse with Mrs. Hudson. His defense is that through the evening and night of the day in question he had been drinking heavily, and that while in the Turf tavern shortly before it closed at midnight, he became so overcome by his indulgence in intoxicating liquor that he lost all recollection of events, and thereafter knew, and now knows, nothing of the occurrences, acts or declarations on his part as testified to on behalf of the State. The testimony relating to the alleged drunken condition of the accused is not offered in excuse or condonation of the crime charged, for, in general, drunkenness is no defense in a prosecution for rape. The accused, consequently does not admit that he had carnal connection with Mrs. Hudson, forcibly and against her will, but that notwithstanding he must be held excused because of his intoxicated condition. On the con-

trary, the testimony is offered in support of the theory of defense that, if the accused was affected by drink to the extent that he lost all recollection of events, it is highly improbable, not to say impossible, that he was physically able to make the bodily movements necessary to be made in causing Mrs. Hudson to submit to his embraces against her will. The contention, therefore, is that the ravishment of Mrs. Hudson's person did not, in fact, occur, or that doubt of the fact is a reasonable one; and that, in any event, the testimony relating to the intoxicated condition of the accused must be considered as affecting strongly the credibility of Mrs. Hudson's testimony.

Obviously, if at the time of the alleged assault the accused was in a stupor as a result of indulgence in intoxicants, or if thereby his bodily powers were so affected that he was physically unable to make the movements involved in the commission of the crime of rape, he could not have committed the offense charged. The question is, of course, one for you to determine upon the evidence before you. You will bear in mind that there is no direct evidence in contradiction of the testimony introduced by the State with respect to the details of the alleged assault made upon Mrs. Hudson; and you will consider the defense offered in connection with the testimony relating to the acts, movements and statements made by the accused while in the tavern and after he left the tavern when it closed. You are the sole judges of the testimony, and of the weight and credit to be given to it; and it is for you to determine the truth of the matters before you and to draw such inferences from the proven facts of the case as intelligent, fairminded men may reasonably draw.

If, upon a careful consideration of all of the facts and circumstances as disclosed by the testimony before you, you shall be satisfied beyond a reasonable doubt that the accused did at the time and place charged in the indictment have carnal connection with Martha Hudson by force and against

her will or consent, your verdict should be guilty. On the other hand, if you shall find that the alleged rape of Mrs. Hudson did not, in fact, occur, or if you shall entertain a reasonable doubt thereupon, you should acquit the accused. Again, if you shall find that the carnal connection of the accused with Mrs. Hudson did occur, but that it was not accomplished by force and against her will, or if you entertain a reasonable doubt thereof, your verdict should be not guilty.

(Instructions were also given with respect to conflict of evidence, presumption of innocence and reasonable doubt; and the statute which permits a recommendation of mercy in connection with a verdict of guilty was interpreted.)