BYRON SELVAGE, PLAINTIFF IN ERROR, V. STATE OF NEBRASKA, DEFENDANT IN ERROR.

27 N. W. 2d 636

Filed May 23, 1947. No. 32196.

*Leon A. Sprague,* for plaintiff in error.

*Walter R. Johnson,* Attorney General, and *Erwin A. Jones,* for defendant in error.

Heard before SIMMONS, C. J., PAINE, CARTER, MESSMORE, YEAGER, CHAPPELL, and WENKE, JJ.

PAINE, J.

This is an appeal by defendant as plaintiff in error from a verdict of guilty and sentence for the crime of rape.

The defendant, Byron Selvage, aged 24 years, and a co-defendant, Everette Duncan, aged 19 years, were charged in an information with the crime of rape, under section 28-408, R. S. 1943, and upon being duly arraigned each entered a plea of not guilty and demanded separate trials, which request was granted. The instant case is that of defendant Byron Selvage. After a trial

lasting several days, the jury returned a verdict of guilty, upon which verdict he was sentenced to the penitentiary for five years.

The defendant sets out five assignments of error, but it is only necessary in this opinion to consider the first assignment of error, viz., "Evidence as to resistance by the prosecutrix and corroboration thereof was not sufficient to sustain a verdict of guilty and the court erred in not sustaining the defendant's motion for a directed verdict."

The prosecuting witness was a young woman 18 years of age, who was doing regular farm work on her father's farm, such as shucking corn, milking, etc., was in good health, and weighed about 140 pounds. She went to a dance in the city of Superior with her brother and the dance closed at about one o'clock in the morning. The evidence does not disclose that she was acquainted with the defendants, although she had a few weeks previously danced with Selvage. They invited her to ride down to a cafe with some others, and told her they would take her home. She thereupon told her brother of this fact, and he drove on home without her. She sat in the back seat of the car with the defendants and visited with them for about twenty minutes while the owner of the car and his "date" were in the cafe. When he returned the defendants requested him to drive them down to the ball park, which was several blocks away. There the prosecutrix and the defendants got out and the others drove back uptown. The prosecutrix tells that she walked about a block into the park, where intercourse was proposed, which she indignantly refused, and then charges that Selvage forcibly threw her to the ground, tightly held her while the co-defendant raped her, and then the other forcibly held her, against her physical resistance and protests, while Selvage raped her.

The evidence discloses that, while this was going on, a car with its lights on drove up and turned within

15 or 20 feet of the prosecutrix, and the two young men very hurriedly got some distance away, while she remained there alone while the car was turning. She made no outcry, nor attempted to communicate with the people in the car in any way. There is little doubt, from the evidence, that she could have made an attempt to escape from the defendants at this time, which she did not do. She testified that later, at a different place in the park, each defendant repeated or completed the crime, and then the three of them walked back several blocks to the same cafe and remained inside for about an hour, where they drank coffee and waited to get a car to take them to Nelson. When a car was finally secured to take them, and while the three were riding in the back seat, she testifies that the two defendants, forcibly and against her will, were guilty of similar acts, but that while she resisted to the utmost she made no complaint to those riding in the front seat.

Upon reaching home about 5:30 a. m., she went directly to the bedroom of her father and mother and made complaint, and told them all that had occurred to her. The next day her father took her to the county attorney, and he requested that she be examined by a physician in Nelson.

On direct examination the doctor was asked: "Q What, if any, other condition did you observe about the female organs there besides the tearing or rupturing of the hymen as you testified? A Well, there seemed to be—there was a little bruising is the effect that looked like there had been sort of mistreating—that is, it was slightly swollen as if they had been roughly handled, see."

On cross-examination the doctor testified generally that he did not find any bruises or abrasions on her legs, or arms, or body.

From a reading of the evidence in the bill of exceptions, we have reached the conclusion that the case comes clearly within our recent opinion in the case of

Cascio v. State, 147 Neb. 1075, 25 N. W. 2d 897, in which there is a complete discussion of a very similar case, with abundant citations of authority. It was there held: "In a prosecution for rape, competent evidence must show beyond a reasonable doubt not only that defendant committed the act charged but that he did so under such circumstances that every element of the alleged offense existed, and where the evidence fails to meet that test, it is insufficient to support a conviction."

"The importance of resistance is to establish two elements in the crime—carnal knowledge by force by one of the parties and non-consent thereto by the other. These are essential in every case in which the complainant had the use of her faculties and physical powers at the time, and was not prevented by terror or the exhibition of brutal force. If there is a lack of resistance, there is small occasion to use force." 44 Am. Jur., Rape, § 6, p. 905.

"Resistance or opposition by mere words is not enough; the resistance must be by acts, and must be reasonably proportionate to the strength and opportunities of the woman. She must resist the consummation of the act, and her resistance must not be a mere pretense, but must be in good faith, and must persist until the offense is consummated." 44 Am. Jur., Rape, § 7, p. 905.

"To constitute the crime of rape, where it appears that at the time of the alleged offense the prosecutrix was conscious and had the possession of her natural mental and physical powers, and was not terrified by threats or in such position that resistance would be useless, it must appear that she resisted to the extent of her ability." Oleson v. State, 11 Neb. 276, 9 N. W. 38.

Section 28-408, R. S. 1943, under which this information is drawn, requires that the defendant shall have carnal knowledge of the woman "forcibly and against her will." In the case at bar, the prosecutrix was of sound mind and body, she made no outcry at any time, and made no attempt to escape, although having an op-

portunity to do so. She made no complaint whatever to many persons with whom she came in close contact in the cafe immediately after the alleged attack. The first complaint was made to her parents some hours afterward. No bruises were found on her body.

These and many other facts found in the evidence throw grave doubt on the question of prosecutrix offering the resistance required by law, for corroborating evidence of force is lacking in this case.

The facts shown in the record make the rule applicable as announced in the case of Whomble v. State, 143 Neb. 667, 10 N. W. 2d 627: "This court recognizes the rule that the jury are the judges of questions of fact but does not hesitate to set aside a verdict when the evidence is clearly insufficient under applicable law to sustain it."

We have reached the conclusion that the evidence is wholly insufficient to support the verdict and judgment. The trial court should have sustained the defendant's motion for a directed verdict, and the judgment is reversed and the action dismissed.

REVERSED AND DISMISSED.