HAZEL *v.* STATE

[No. 144, September Term, 1959.]

*Decided February 17, 1960.*

The cause was argued before BRUNE, C. J., and HENDERSON, HAMMOND, PRESCOTT and HORNEY, JJ.

*Milton B. Allen* and *Jacques E. Leeds,* for appellant.

*James H. Norris, Jr., Special Assistant Attorney General,* with whom were *C. Ferdinand Sybert, Attorney General, Saul A. Harris, State's Attorney of Baltimore City,* and *James W. Murphy* and *Russell White, Assistant State's Attorneys of Baltimore City,* on the brief, for appellee.

HORNEY, J., delivered the opinion of the Court.

This is an appeal by Clifford Earl Hazel (the defendant) from the judgment entered and sentence imposed upon his conviction of rape by the three-judge court, sitting without a jury. The sole question presented is whether the evidence was sufficient to sustain the verdict of guilty.

On the afternoon of April 2, 1959, at about 12:20, the prosecuting witness (the prosecutrix or victim) was unloading groceries from her automobile to her home. Within seconds after she entered the house, and while talking to the maid about feeding the youngest of her three children, she felt an arm around her neck and heard the person behind her say, " 'Don't move, this is a hold up' or words to that effect." The defendant had apparently followed her through the open doorway. According to the prosecutrix he also said, "I have a gun. If you move I will shoot the baby. You don't want me to kill the baby do you?" The threat was also heard by the maid. After directing the prosecutrix to close the front

door he demanded money and she gave him between twenty and thirty dollars. The defendant kept his right hand in his raincoat pocket and repeatedly stated that he had a gun although one was never seen.

On further demand the prosecutrix also gave the defendant her jewelry and pocket book and the maid gave him her ring. When the defendant indicated that he intended to put the prosecutrix, the maid and the three children into a closet, the prosecutrix interposed an objection that it was too small and the defendant gave up the idea. Apparently seeking more jewelry he then took all of them upstairs—though he never released his hold on the prosecutrix—and placed the maid and the children in the bathroom. After a brief search of the master bedroom, he directed the prosecutrix to go back downstairs with him. He took her to the kitchen and informed her he was going to tie her hands. When he asked for a cord she picked out a piece that was "not too harsh" and he tied her hands behind her. He then gagged her with a towel, although the gag was loose enough to allow her to talk. He then required her to enter the cellar and he followed her. As they descended, the cellar door locked behind them, and could not then be opened from the inside.

After looking around the cellar, the defendant made obscene remarks to and improper advances toward the prosecutrix and when she gasped "no," he pulled the gag tight around her throat and almost strangled her. When she protested, he loosened the gag and seeing a dark room in the cellar, took her into it and told her to lie down on the floor. Her hands remained tied behind her. He did not touch her with his hands. But he asked her to raise her legs and she complied, whereupon he knelt down over her and intercourse followed. She stated she "did not struggle * * * [because she] was afraid for * * * [her] life." The noise of the children upstairs interrupted the sexual act, and, after the oldest child had opened the cellar door at the command of the defendant, the victim and the defendant returned to the second floor, he shoving her ahead of him up the cellar stairs. Asking where the telephone was he pulled the cord out of the wall and resumed looking for more jewelry. Still leaving

the maid in the bathroom, the defendant threw his arms around the prosecutrix and made her go downstairs again. On this occasion they stopped in the living room. The children followed them. There the defendant required the prosecutrix to have intercourse again. During the attack he ordered her to shift her position and lie face downward, which she did. When he had finished he locked the victim in the cellar and left the premises by the front door.

As soon as she was released from the cellar by the children, the victim called the police to report what had happened. The police report shows that only a robbery had been reported by the victim over the telephone. When the officers arrived she did not tell them about the rape until they were about ready to depart. She explained this by saying that because the officers had interrogated her only about the robbery she believed they had already gotten her report of rape from her telephone call.

A police sergeant [Viola Hill White] testified that in an interview with the prosecuting witness the day after the rape had occurred, the victim had at no time said that force was used and that, on the contrary, she repeated several times that he was "extremely gentle." The victim denied that she had made any such remark, maintaining that she had said the defendant "was not brutal." The defendant did not testify but in statements to the police he did not deny the intercourse but claimed that it was with the consent of the prosecutrix. Furthermore, he denied that he had made any threats against the prosecutrix or any of her children. Finally, while he denied having a gun, he admitted having his hand in his pocket and that it could have been there to give the impression that he had a weapon.

Since the defendant thus admitted the intercourse, the only real contention is that the evidence was insufficient to sustain the conviction of rape because the conduct of the prosecutrix was such as to render her failure to resist consent in law.

The criminal statute of this state, although fixing the penalties, does not define the crime of rape. See Code (1957), Art. 27, § 461. However, the law writers generally define common law rape as the act of a man having unlawful carnal

knowledge of a female over the age of ten years by force without the consent and against the will of the victim. Hochheimer, *Criminal Law*, § 47 (1911); 1 Wharton, *Criminal Law and Procedure*, § 300 (1957); 44 Am. Jur., *Rape*, § 2; 75 C.J.S., *Rape*, § 1.

Force is an essential element of the crime and to justify a conviction, the evidence must warrant a conclusion either that the victim resisted and her resistance was overcome by force or that she was prevented from resisting by threats to her safety. But no particular amount of force, either actual or constructive, is required to constitute rape. Necessarily that fact must depend upon the prevailing circumstances. As in this case force may exist without violence. If the acts and threats of the defendant were reasonably calculated to create in the mind of the victim—having regard to the circumstances in which she was placed—a real apprehension, due to fear, of imminent bodily harm, serious enough to impair or overcome her will to resist, then such acts and threats are the equivalent of force. *State v. Thompson*, 227 N. C. 19, 40 S. E. 2d 620 (1946). See also *State v. Dill*, 3 Terry 533, 40 A. 2d 443 (Del. 1944); 75 C.J.S., *Rape*, § 12b; 44 Am. Jur., *Rape*, § 5. Cf. *Selvage v. State*, 148 Neb. 409, 27 N. W. 2d 636 (1947).

With respect to the presence or absence of the element of consent, it is true, of course, that however reluctantly given, consent to the act at any time prior to penetration deprives the subsequent intercourse of its criminal character. There is, however, a wide difference between consent and a submission to the act. Consent may involve submission, but submission does not necessarily imply consent. Furthermore, submission to a compelling force, or as a result of being put in fear, is not consent. *State v. Thompson, supra; State v. Dill, supra.*

The authorities are by no means in accord as to what degree of resistance is necessary to establish the absence of consent. However, the generally accepted doctrine seems to be that a female—who was conscious and possessed of her natural, mental and physical powers when the attack took place—must have resisted to the extent of her ability at the time, unless it appears that she was overcome by numbers or was so terri-

fied by threats as to overpower her will to resist. 44 Am. Jur., *Rape*, § 7. Since resistance is necessarily relative, the presence or absence of it must depend on the facts and circumstances in each case. See *Kidd v. State*, 97 Okla. Crim. 415, 266 P. 2d 992 (1953). But the real test, which must be recognized in all cases, is whether the assault was committed without the consent and against the will of the prosecuting witness.

The kind of fear which would render resistance by a woman unnecessary to support a conviction of rape includes, but is not necessarily limited to, a fear of death or serious bodily harm, or a fear so extreme as to preclude resistance, or a fear which would well nigh render her mind incapable of continuing to resist, or a fear that so overpowers her that she does not dare resist. *State v. Hoffman*, 228 Wis. 235, 247, 280 N. W. 357 (1938).

In the instant case the three-judge court, "because of [the] acts of violence * * * to the prosecuting witness * * * and the * * * threats of serious harm to her children and herself," found, beyond a reasonable doubt, that "there existed a genuine and continuing fear of such harm on the part of the prosecuting witness * * * that the sexual demands of the defendant and the ensuing acts of intercourse under this fear and * * * other circumstances of the case amounted to a felonious and forcible act of the defendant against the will and consent of the prosecuting witness." We think the evidence was sufficient to sustain the conviction. The issue of whether the intercourse was accomplished by force and against the will and consent of the victim was one of credibility, properly to be resolved by the trial court. *Merchant v. State*, 217 Md. 61, 70, 141 A. 2d 487 (1958). This Court need not be convinced beyond a reasonable doubt in order to sustain a conviction. *Berry v. State*, 202 Md. 62, 95 A. 2d 319 (1953).

On an appeal in a nonjury criminal case involving the sufficiency of the evidence, the only function of this Court under Maryland Rule 741 c is to determine whether the evidence, or proper inferences therefrom, was sufficient for the trial court to find the defendant guilty. If it was, we must affirm

since the verdict of the trial court may not be set aside on the evidence unless clearly erroneous.

The judgment will be affirmed.

*Judgment affirmed.*