## MARK EDWARD BLOTKAMP v. STATE OF MARYLAND

[No. 773, September Term, 1979.]

*Decided March 4, 1980.*

The cause was argued before MOORE, LISS and WILNER, JJ.

*Arthur A. DeLano, Jr., Assistant Public Defender,* with whom was *Alan H. Murrell, Public Defender,* on the brief, for appellant.

*Diane G. Goldsmith, Assistant Attorney General,* with whom were *Stephen H. Sachs, Attorney General, Sandra A. O'Connor, State's Attorney for Baltimore County,* and *Jeffrey N. Himmelstein, Assistant State's Attorney for Baltimore County,* on the brief, for appellee.

WILNER, J., delivered the opinion of the Court.

Susan worked the night shift (11:00 p.m. to 7:00 a.m.) at an Amy Joy Donut Shop in Essex. On the evening of June 4,

1978, she was alone in the store when, about 11:30 p.m., a man entered. The man, whom she identified in court as appellant, sat down at the counter, asked for, and received, a cup of coffee. While he drank the coffee, Susan cleaned some shelves and then walked through a connecting door into the kitchen area. She heard a sound, looked around, and saw appellant standing in the kitchen doorway. He said that he wanted money.

Susan was frightened. There was no escape route. The only way out was where he was standing. Her fear was by no means assuaged when appellant told her to remove her clothes "so that I wouldn't be able to call the police." She hesitated, told him that she would not call the police and just wanted to be left alone; "but then he said he had a knife." Susan never actually saw a knife, but, being frightened, she took off her clothes. Appellant ran back to the cash register at the counter, got the money in it, and then returned. He said "that he could just take the money and go, but he wasn't going to make it that easy." He told Susan to lie down on the floor. She did — "[b]ecause I was too scared to do anything else."

Appellant pulled his pants down, got on top of her, and proceeded to have sexual intercourse. Susan was crying. She did not offer resistance; "I was too scared," she said. Until then, Susan was a virgin.

Just as appellant finished his nefarious business, a customer came into the store. Appellant got up, pulled his pants up, and went out to wait on the customer. He told Susan to get dressed. Appellant then came back, told her to wait five minutes before calling anyone, or he would return with his knife, and then left through the front door.

Scott McCarter and Tony Mullins were the customers Susan heard. They both stated that they went to the Amy Joy shop at about 11:30 p.m. on June 4, 1978. No one was behind the counter. When McCarter called out if anyone was there, appellant, whom he knew slightly, came out and waited on them. Both McCarter and Mullins identified appellant.

When appellant (and the customers) left, Susan called her "boss," who, in turn, called the police. She was promptly

taken to Franklin Square hospital and examined. Two red marks, considered as recent trauma by the examining physician, were noted on her back, and a "Recent Blue Bruise" was observed on her left arm. There was also noted (1) "Laceration (Recent) on midline of Forschette [1] at 6 O'clock position (sutured 4 stitches)"; (2) "fresh-recent-Laceration of Hymen"; (3) "Whitish material on pubic hair," later identified as semen; and (4) "Blood clots on ext. genitalia."

Scott McCarter learned that night about the robbery, and advised the police of his presence at the shop. A few weeks later, he saw appellant on the street and immediately notified the police. This led to appellant's arrest.

Appellant denied ever being at the shop on the evening of June 4, and also, of course, denied raping Susan. A jury in the Circuit Court for Baltimore County didn't believe him. It found him guilty of first and second degree rape, assault with intent to rape, assault, and robbery, upon which appellant was given concurrent sentences totalling 20 years.[2]

In this appeal, he argues: (1) insufficiency of the evidence, and (2) error in refusing to give a requested instruction.

### (1) Sufficiency of the Evidence

Appellant's complaint here is really a dual one. His principal defense was that he was nowhere near the Amy Joy shop on June 4, but was home in bed sick. He denied ever being in Susan's presence or having anything to do with what occurred. One of his claims here is that, based upon that defense, the evidence was insufficient to establish his "criminal agency." This, of course, is nonsense. Three witnesses placed him at the scene, and one, Susan, positively identified him as her attacker.

---

**1.** The forschette, or fourchette, is a small fold of skin, connecting the back ends of the *labia minora*. It thus forms part of the membrane surrounding the vaginal orifice.

**2.** He received 20 years for the first degree rape; nothing for the second degree rape, which was merged; 10 years for assault with intent to rape; nothing for assault, which was also merged; and 10 years for robbery.

Seeking succor from the recent decisions of this Court in *Rusk v. State,* 43 Md. App. 476 (1979), and *Goldberg v. State,* 41 Md. App. 58 (1979), appellant alternatively contends that the evidence failed to establish the requisite force or threat of force necessary to make what happened to Susan rape in the first or second degree. Again, we disagree.

Md. Ann. Code art. 27, § 462 (a), defines first degree rape as follows:

> ". . . A person is guilty of rape in the first degree if the person engages in vaginal intercourse with another person by force against the will and without the consent of the other person and:
>
> (1) Employs or displays a dangerous or deadly weapon or an article which the other person reasonably concludes is a dangerous or deadly weapon; or
>
> (2) Inflicts suffocation, strangulation, disfigurement, or serious physical injury upon the other person or upon anyone else in the course of committing the offense; or
>
> (3) Threatens or places the victim in fear that the victim or any person known to the victim will be imminently subjected to death, suffocation, strangulation, disfigurement, serious physical injury, or kidnapping; or
>
> (4) The person commits the offense aided and abetted by one or more other persons."

There was clearly enough evidence to prove that appellant had vaginal intercourse with Susan, and that such act was against her will and without her consent. On the other hand, there was no evidence that enumerated circumstances (1), (2), or (4) were involved. The questions posed by appellant are whether there was sufficient evidence (1) of "force" in connection with the intercourse, as required by the first part of § 462 (a), *or* (2) that appellant "threaten[ed] or place[d] the victim in fear that [she] will be imminently subjected to death [or] serious physical injury . . . ," *i.e.,* the third enumerated

aggravating circumstance. These questions involve overlapping, but somewhat different, concepts.

As we pointed out in *Goldberg v. State,* 41 Md. App. 58 (1979), prior to 1976, rape was a common law crime in Maryland without a statutory definition. The Code (art. 27, § 461) did no more than impose a penalty for a convicted rapist and provide that "penetration shall be evidence of rape, without proof of emission." Rape was commonly defined in judicial decisions as "the act of a man having unlawful carnal knowledge of a female over the age of ten years *by force* without her consent and against the will of the victim." (Emphasis supplied.) *See Hazel v. State,* 221 Md. 464, 469 (1960). Force, as the *Hazel* Court made clear, was "an essential element of the crime." (*Id.,* at 469); but "force" itself was an undefined term. What kind of "force" was necessary? This, too, was addressed in *Hazel.* The Court said, also at 469:

> "But no particular amount of force, either actual or constructive, is required to constitute rape. Necessarily that fact must depend upon the prevailing circumstances. As in this case force may exist without violence. If the acts *and threats* of the defendant were reasonably calculated to create in the mind of the victim — having regard to the circumstances in which she was placed — a real apprehension, due to fear, of imminent bodily harm, serious enough to impair or overcome her will to resist, *then such acts and threats are the equivalent of force.*" (Emphasis supplied.)

The assailant in *Hazel* broke into the victim's home apparently intent on robbery. He threatened to shoot her child and he assaulted her in a variety of ways, all quite independently of any attempt at or suggestion of intercourse; he held her by the neck, tied her hands, and at one point choked her. The two acts of intercourse that subsequently occurred were accomplished without further violence, or brutality, or physical resistance. Hazel directed her what to do, and, out of fear, she complied. In this regard — in terms of the *sexual* assault — it was the ever-present threats made by

the assailant, and his apparent ability to carry them out, that sufficed as the equivalent of "force." The threat of serious harm, which, of course, was the threat of force, was equated with force itself. Under *Hazel,* then, evidence sufficient to establish the third aggravating circumstance — threats or acts that placed the victim in fear of imminent serious physical injury — would also suffice to establish force.

In 1976, the General Assembly made rape and other sexual offenses specific statutory crimes. *See* Laws of Md., 1976, ch. 573. Among other things, it split the common law crime of rape into two degrees. First degree rape, defined in a new § 462 of art. 27, encompassed two types of sexual assault. One was essentially the pre-existing common law rape, *almost* as defined in *Hazel,* coupled with one or more of four aggravating circumstances. The second was a variety of carnal knowledge — engaging in vaginal intercourse with a victim under 14 years of age where the assailant is at least four years older than the victim. In the first instance, § 463 (a) (1), what was required was vaginal intercourse "by force *or threat of force*" against the will and without the consent of the victim. (Emphasis supplied.) The second type of proscribed conduct did not specifically require force, threat of force, or lack of consent. The youth of the victim and the disparity in age sufficed as the legislative substitute for these more traditional elements.

In 1977, the General Assembly decided that the "carnal knowledge" type of assault should be "downgraded" to second degree rape. Thus, by Laws of Md., 1977, ch. 292, it amended §§ 462 (a) and 463 (a) of art. 27, to achieve that result. The "carnal knowledge" crime was moved from § 462 (a), defining first degree rape, to § 463 (a), defining second degree rape. In the process of this amendment, however, the phrase "or threat of force" was deleted from § 462 (a). Apart from the four aggravating circumstances, first degree rape now requires "vaginal intercourse with another person *by force* against the will and without the consent of the other person." (Emphasis supplied.)

This deletion, appellant claims, marks a departure from *Hazel*; a "threat" will no longer suffice as the equivalent of

"force." Force, he asserts, means *actual* force and not a threat of it; and in this case, there was no evidence of such actual force.

There is nothing in the legislative history of the 1977 Act to indicate why the phrase was dropped from the law — whether it was deliberate or inadvertent; [3] and we may one day have to consider the effect of the deletion. But not in this case; for we are convinced that the evidence here sufficed to show *actual* force and not merely the threat of it.

Unlike the situation in *Rusk* or *Goldberg* (both *supra*), or *Winegan v. State,* 10 Md. App. 196 (1970), Susan was physically harmed in this assault. There was not merely the incidental touching or pulling or manipulation evident in *Rusk* or *Goldberg.* Nor was there just the normal trauma associated with the loss of virginity, or that necessarily involved in the act of intercourse itself. *See Goldberg, supra,* footnote 3, 41 Md. App. at 69. Susan received substantial injuries to her genital area, requiring, as noted, surgical suturing. This was force; raw, actual force; unnecessary force; force beyond that normally involved in completing the coital act.

With respect to the third aggravating circumstance, appellant's assertion of evidentiary insufficiency is based upon his assertions that (1) Susan "was never threatened with physical injury," (2) appellant did not display a weapon, and (3) Susan "was not prevented from escaping or seeking assistance from the customers as they entered the donut shop." Again, we disagree. Susan was, in fact, threatened with serious physical injury. Appellant's pointed and repeated reference to having a knife, under the circumstances in which it was made, was certainly calculated — reasonably calculated — to create in Susan's mind a real

---

**3.** The title to the 1977 Act, and the legislative history of it as revealed in the House and Senate journal entries and other available public records, indicates that the sole purpose of the Act was to make the carnal knowledge offense *second degree* rape, and not to otherwise redefine or change the elements of first degree rape. We cannot, of course, presume that the General Assembly does anything inadvertently, but from all of the records available to us, there is at least a reasonable possibility that this deletion may have in fact been an unintended one.

apprehension of serious and imminent bodily injury if she did not comply with his wishes; and if she had that apprehension, as she said she did, then she was indeed threatened. Actual display of a weapon is not necessary to establish the reality or the credibility of the threat. *See Hazel, supra.*

Moreover, despite appellant's assertions to the contrary, and unlike *Rusk* or *Winegan, supra,* Susan had no opportunity to escape or to seek assistance. She was alone in the shop when the rape occurred; the customers did not come in until the attack was over. At the critical time, Susan was absolutely helpless — entirely at appellant's mercy.

Under this frightening circumstance, appellant's actions clearly sufficed to establish the necessary threat; they were, in the words of *Hazel,* "reasonably calculated to create in [Susan's] mind — having regard to the circumstances in which she was placed — a real apprehension, due to fear, of imminent bodily harm, serious enough to impair or overcome her will to resist." Appellant was no friend or acquaintance of Susan — no Lothario simply going too far; he came to the shop to commit robbery. *See Rice v. State,* 9 Md. App. 552, 560 (1970), *cert. den.* 259 Md. 735. Susan's first and only impression of appellant was that he was a criminal bent on stealing.

Accordingly, we believe that the evidence did suffice to sustain the conviction for first (and second) degree rape.

### (2) *Instruction*

The court gave the following instruction with respect to the elements of rape:

"The State must prove beyond a reasonable doubt that the act of vaginal intercourse between the Defendant and Susan Green was accomplished by force. The jury should be advised however, that force may exist without violence. If the acts and threats of the Defendant were reasonably calculated to create through fear a real apprehension of immanent [sic] bodily harm, serious enough to impair or overcome

her will to resist, then such acts and threats are the equivalent of force.

"You are instructed that force is an essential element of the crime of rape, and to justify a conviction the evidence must convince you beyond a reasonable doubt and to a moral certainty that the prosecutrix resisted and that her resistance was overcome either by force or by her being prevented from resisting from threats to her safety. *Such threats to her safety, if any you should find must have been such as to have been reasonably calculated to create in her mind, having regard to the circumstances in which she was placed, a real apprehension, due to fear of imminent bodily harm, serious enough to impair or overcome her will to resist.*" (Emphasis supplied.)

Appellant excepted to what he deemed the court's failure to include a statement that the victim's fear must be "of death or serious bodily harm, or a fear so extreme as to preclude resistance, or a fear which would well nigh render her mind incapable of continuing to resist, or a fear that so overpowers her that she does not dare resist."

We think that the instruction given accurately and adequately stated the law. *Hazel v. State, supra.* Appellant's request differed only in rhetoric, not in substance.

> *Judgments affirmed; appellant to pay the costs.*