REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 1751

September Term, 2013

_____

IN RE: JAMES R.

_____

Graeff,
Leahy,
Thieme, Raymond, G., Jr.
    (Retired, Specially Assigned),

JJ.

_____

Opinion by Thieme, J.

_____

Filed: October 30, 2014

In this juvenile delinquency case, James R., appellant, asks this Court to review the adjudication of delinquency rendered by the Circuit Court for Cecil County. Following an adjudicatory hearing on September 25, 2013, the court determined that James was involved in the commission of an act that, if committed by an adult, would constitute second degree rape in violation of Md. Code (2002, 2012 Repl. Vol.), § 3-304(a)(1) of the Criminal Law Article. ("Crim. Law"). Following a disposition hearing on October 23, the court ordered "commitment to the Department of Juvenile Services for appropriate placement."

In his timely appeal from the adjudication of delinquency and disposition, appellant maintains that the evidence is insufficient to sustain the court's finding of rape, specifically the finding that the act was committed with force and without consent. We disagree and shall affirm the adjudication in all respects.

## BACKGROUND

The State's case against appellant was based primarily on the testimony of the complainant, D.[1] At the time of the incident in question, D was 14 years old and appellant was 13. The two had "dated" for a short time when they had both attended sixth grade, and continued to be friends and confidants.

Because the two had not seen each other "in a while," they "wanted to catch up." Accordingly, D's mother drove her to appellant's house at about 5:00 p.m. on the day in

---

[1] We shall refer to the complainant as "D." *Cf. generally*, *Muthukumarana v. Montgomery County*, 370 Md. 447, 458 n.2 (2002) (first name and first initial of last name).

question.  D arrived, and greeted James's parents.  After this, the two went downstairs to appellant's room in the basement to watch a movie.

It was dark in the basement when appellant kissed D.  The girl did not think much about this at first:

> [PROSECUTOR:]  Okay.  So you go down to the basement to his room.  What happens?
>
> A.  We go down.  We set down on his bed.  We talk.  We watch a movie.  And then he kissed me, and I was just like, oh, it's just a kiss, nothing; and then it –
>
> Q.  This is upsetting to you to have to talk about it?
>
> A.  Yes.

The two continued to watch the movie when they "laid down."  Appellant then told D that he was a "monster" and whispered in D's ear that she was "going to get fucked."  In the wake of these comments, D "was in shock" and she "froze."  She then testified that she got raped.  D said that appellant got on top of her and "penetrated" her; that he "stuck his penis inside [her]."  Appellant "had ahold of" her arms.  When asked by defense counsel whether she had been struggling with appellant, D recounted that she was "squirming" as appellant was removing her pants.  During the intercourse, D "said no" and then "started to cry[.]"  At this, appellant got off of her.  D did not consent to the sexual intercourse.

After this incident, appellant apologized, and admitted that "he's a monster."  D was "upset and scared."  After the police became involved, an investigating officer asked

2

her to call appellant.  Their conversation was recorded, and appellant apologized during this call.  Appellant also sent text messages to D, in which he again apologized.

On cross-examination, D testified that while she did not scream, and did not alert the adults who were just upstairs, she was crying.  She acknowledged that she was getting "flashbacks," which the defense apparently sought to show were the true reasons for D's distress.[2]  D would not tell her mother about the incident until much later, after she spoke with friends who urged her to come forward.

Her mother, RM, testified next, and recalled that on the date in question she came to appellant's house to pick up and bring D home.  RM recounted that D would not make eye contact with her, and that her daughter acted a "little bit shaky."  D was "very reserved" over the following week or two, and eventually revealed the details of the incident.

The State rested after RM's testimony, and appellant testified in his defense.  He presented a conflicting version of the facts, and insisted that D consented to the intercourse.

Following testimony and argument, the court found that appellant was involved in the commission of rape.  The court articulated its ruling as follows:

---

[2]  Appellant testified that after he touched D on her backside following the intercourse, D became upset and explained that the incident brought about "flashbacks and memories of a before time where something ha[d] happened to her."

3

THE COURT:   Not an easy case to decide because the testimony of the victim and the testimony of the accused is diametrically opposed in what actually transpired on June 5th. Therefore, the court has to look through the testimony and evaluate reasonable and rational inferences that you can draw to ascribe credibility or detract credibility to one version or the other.

According to the victim he either – the accused either ripped her pants off or pulled them off.  She immediately said no.  Thereafter, he stuck – according to her, quote, stuck his penis in me, unquote.  At that point she testified she went into shock, and she described what shock meant to her, and she began crying.  Prior to the incident he had said that he was sorry he was a monster, said the same thing thereafter.

To summarize the testimony of the accused, the events of June 5th were consensual in nature.  However, several things lead to credence of the testimony of the victim.  First of all . . . the event took place in the basement while his entire family, mother, father and sister were upstairs.  I have a hard time accepting the fact that two individuals would engage in consensual sex with a family upstairs, the mother at one time coming downstairs.  How do you explain it?  Well, I – going beyond the realm of testimony I think I'm at liberty to say from life's experience that there come times when men especially lose all sense of rationale and become overcome by – by emotion; and it appears to me that this is what happened here.

The other factor that concerns me from the defense's position is that the events of June 5 were consensual.  If that's the case why did the victim talk about it weeks thereafter, eventually going to her mother?  If it was consensual, it was consensual; it was over and done with.  That position lends credence to her testimony as well.

And the long lasting affects thereafter, according to the mother she was quiet, shaky, reserved, no appetite, slept a lot.

4

And, of course, the last thing is the recording that was played before the court; wherein, the respondent apologized several times and said he was sorry.

The court is convinced beyond a reasonable doubt for reasons stated that the non-consensual act took place amounting to second degree rape. There is a finding of delinquency in fact beyond a reasonable doubt, and such a finding of court is enrolled.

## DISCUSSION

The parties to this appeal dispute the sufficiency of the evidence. Appellant insists that D consented to the intercourse, and that the record is insufficient to support an inference of the employment of force to compel D to engage in intercourse. He maintains that the circumstances of this case certainly do not show any reasonable fear on the part of the complainant. The State urges that we affirm, and points to the fact that appellant "used actual force when performing vaginal intercourse on the victim[,]" and that the complainant's resistance can be demonstrated by the fact that she "verbally resisted his advances," and that she "squirm[ed]" while appellant was removing her pants.

When faced with a challenge to the sufficiency of the evidence, Maryland courts have applied the test set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979). *See Smith v. State*, 415 Md. 174, 184 (2010). We must determine "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. at 319. *Accord, Allen v. State*, 402 Md. 59, 71 (2007). This inquiry is

5

one of law, so that our review of this legal determination is plenary. *See Hudson v. State*, 152 Md. App. 488, 523, *cert. denied*, 378 Md. 618 (2003).

"This same standard of review applies in juvenile delinquency cases. In such cases, the delinquent act, like the criminal act, must be proven beyond a reasonable doubt." *In re Timothy F.*, 343 Md. 371, 380 (1996) (citation omitted). *Cf. Branch v. State*, 305 Md. 177, 182 (1986) (criteria for review of sufficiency same whether verdict rendered by jury or court). "Absent clear error, an appellate court will not set aside the judgment of the trial court." *Matter of Tyrek S.*, 118 Md. App. 270, 273 (1997), *aff'd on other grounds*, 351 Md. 698 (1998).

On this record, we disagree with appellant's claim that the State's case falls far short of demonstrating the requisite "force or threat of force." At the time of the events that drove the instant prosecution, the relevant statutory provision, Crim. Law § 3-304(a) read as follows:

> **§ 3-304. Rape in the second degree.**
>
> (a) *Prohibited*. – A person may not engage in vaginal intercourse with another:
>
> (1) by force, or the threat of force, without the consent of the other;
>
> (2) if the victim is a mentally defective individual, a mentally incapacitated individual, or a physically helpless individual, and the person performing the act knows or reasonably should know that the victim is a mentally defective individual, a mentally incapacitated individual, or a physically helpless individual; or

6

(3) if the victim is under the age of 14 years, and the person performing the act is at least 4 years older than the victim.

Only the first of the above three modalities is at issue here. This has been a traditional means by which rape has been defined.[3]

---

[3] As noted by one commentator:

> While some statutes invite a more restrictive application than others, there is no "model statute" solution to rape law, because the problem has never been the words of the statutes as much as our interpretation of them. A typical statute of the 1890's-punishing a man who engages in sexual intercourse "by force" and "against the will and without the consent" of the woman-may not be all that different from the "model" statute we will enforce in the 1990's. The difference must come in our understanding of "consent" and "will" and "force."

Susan Estrich, *Rape*, 95 Yale L. J. 1087, 1093 (1986) (footnote omitted). Our Court of Appeals has noted that "[w]hile Maryland currently possesses a statutory definition of the offense of rape, before 1976, rape was defined at common law." *State v. Baby*, 404 Md. 220, 247 n.12 (2008). "In 1976, the General Assembly enacted a new gender-neutral statutory scheme recognizing various degrees of sexual crimes[.]" *State v. Mayers*, 417 Md. 449, 467 (2010) (footnote omitted). "Since the creation of the statutory definition, [Maryland Courts] have still been called upon to look to the common law to interpret terms or elements which are not defined by statute." *State v. Baby*, 404 Md. at 247 n.12.

Of course, the common law approach to rape has become a fulcrum around which divergent views of rape turn:

> According to critics, the traditional and still dominant common law definition of rape – which requires proof of "force or threat of force" and which excuses a "reasonably mistaken" belief in consent – is founded on antiquated expectations of male sexual aggression and female submission. Defenders of the common law reply that the

(continued...)

7

Appellant directs our attention to this Court's decision in *Goldberg v. State*, 41 Md. App. 58, *cert. granted*, 284 Md. 744, *cert. dism'd* (1979), in which this Court reversed a rape conviction.[4] The complainant in that case was persuaded to accompany Goldberg to his home by the latter's claim that she was "an excellent prospect to become a successful model." *Id*. at 59. Goldberg took the complainant to a temporary "studio." Soon after arriving, he ushered the complainant into a bedroom and started unbuttoning

[3](...continued)
> traditional definition of rape sensibly accommodates contemporary practices and understandings – not only of men but of many women as well. The statement "no," they argue, does *not* invariably mean "no" but rather sometimes means "yes" or at least "maybe."

Dan M. Kahan, *Culture, Cognition, and Consent: Who Perceives What, and Why, in Acquaintance-Rape Cases*, 158 U. Pa. L.Rev. 729, 731 (2010) (footnote omitted). Professor Kahan also noted with respect to the element of force, that

> [u]nder the still-dominant common law definition of rape, proof that a man engaged in vaginal intercourse with a woman without her consent is legally necessary but not sufficient for conviction. The prosecution must show in addition that the man overcame the will of the victim by "force or threat of force."

*Id*. at 745 (footnote omitted). *See State v. Baby*, 404 Md. at 260 ("force or the threat of force" essential element of crime of rape). The element of "force" or the "threat of force," however, has not been clearly defined, and courts "have often struggled to distinguish what kind of conduct satisfies the element[.]" Daphne Edwards, Comment, *Acquaintance Rape & the "Force" Element: When "No" is Not Enough*, 26 Golden Gate U. L.Rev. 241, 259 (1996) (footnotes omitted).

[4] The dismissal of *certiorari* in *Goldberg v. State*, 41 Md. App. 58 (1979) is noted by this Court in *Rusk v. State*, 43 Md. App. 476, 480 (1979) (en banc), *rev'd*, 289 Md. 230 (1981).

her blouse. She demurred, and began to realize that she was not auditioning to be a model. Goldberg tried to assure her that he would not hurt her, and continued to try to convince her that this was a modeling job. *Id.* at 60. The complainant disrobed because "she 'was really scared of him,'" and claimed that there was "nothing [she] could do." *Id.* Goldberg "pushed" her down on the bed, and the complainant protested, saying she did not "want to do it" and that she wanted to go home, and implored Goldberg to leave her alone. *Id.* at 61. Goldberg performed intercourse on the complainant and eventually drove her home.

This Court reversed Goldberg's conviction, concluding that the evidence was legally insufficient to prove the "requisite element of 'force or threat of force.'" 41 Md. App. at 65-66. This Court first explained that the complainant's testimony negated the presence of a "threat of force." This Court also determined that the record did not establish actual force:

> There was certainly no "threat of force". On the contrary, the prosecuting witness on numerous occasions in her testimony negated that element. As to actual force, the only arguable evidence is the prosecuting witness' testimony that after she herself had removed all her clothes, the appellant put his hands on her shoulders and "pushed" her down on the bed. This is negated, however, by her further testimony on cross-examination that "he didn't push but guided (her) on the bed". She admitted that she was not "injured or anything" by the encounter. This, of course, is consistent with the findings of the physician who subsequently examined her. Those findings so far as they relate to the use of any actual force were completely negative.

9

*Goldberg*, 41 Md. App. at 66.

This Court recognized that "*actual physical* force is not an indispensable element

of the crime of rape." *Id*. This Court then quoted from the Court of Appeals' decision in

*Hazel v. State*, 221 Md. 464 (1960), in which the Court of Appeals instructed:

> Force is an essential element of the crime and to justify a conviction, the evidence must warrant a conclusion either that the victim resisted and her resistance was overcome by force or that she was prevented from resisting by threats to her safety. But no particular amount of force, either actual or constructive, is required to constitute rape. Necessarily that fact must depend upon the prevailing circumstances. . . . [F]orce may exist without violence. If the acts and threats of the defendant were reasonably calculated to create in the mind of the victim – having regard to the circumstances in which she was placed – a real apprehension, due to fear, of imminent bodily harm, serious enough to impair or overcome her will to resist, then such acts and threats are the equivalent of force.

> With respect to the presence or absence of the element of consent, it is true, of course, that however reluctantly given, consent to the act at any time prior to penetration deprives the subsequent intercourse of its criminal character. There is, however, a wide difference between consent and a submission to the act. Consent may involve submission, but submission does not necessarily imply consent. Furthermore, submission to a compelling force, or as a result of being put in fear, is not consent.

> * * *

> The kind of fear which would render resistance by a woman unnecessary to support a conviction of rape includes, but is not necessarily limited to, a fear of death or serious bodily harm, or a fear so extreme as to preclude resistance, or a fear which would well nigh render her mind incapable of

10

> continuing to resist, or a fear that so overpowers her that she does not dare resist.

*Goldberg v. State*, 41 Md. App. at 66-67 (quoting *Hazel v. State*, 221 Md. at 469-70) (citations omitted).

In *Goldberg*, this Court found that the record did not establish that Goldberg's "words or actions 'were reasonably calculated to create in the mind of the victim' a reasonable fear that if she had resisted he would have harmed her[.]" *Id*. at 69. This Court then concluded:

> Without proof of force, actual or constructive, evidenced by words or conduct of the defendant or those acting in consort with him, sexual intercourse is not rape. This is so even though the intercourse may have occurred without the actual consent and against the actual will of the alleged victim. Thus it is that in the absence of actual force, unreasonable subjective fear of resisting cannot convert the conduct of the defendant from that which is non-criminal to that which is criminal.

*Id*. (footnote omitted). As we shall explain below, we consider *Goldberg* to be inapposite.

In *State v. Mayers*, 417 Md. 449 (2010), the defendant Mayers was convicted of second degree sexual offense, second degree assault and fourth degree sexual offense. At trial, Mayers had argued that there was "no evidence of verbal threats or that [the victim] had sustained any physical injury." *Mayers*, 417 Md. at 465. His arguments were rejected, and he appealed the resulting conviction.

11

A divided panel of this Court reversed, concluding that the State presented insufficient evidence of the requisite "force or the threat of force." The Court of Appeals disagreed, and held that there was indeed sufficient evidence of "force or the threat of force" to enable a rational jury to conclude that Mayers committed a second degree sexual offense. The Court rejected Mayers's assertion that the "statutory standard (for force or the threat of force) may only be met by physical violence[.]" *Mayers*, 417 Md. at 475.

In reaching its conclusion, the *Mayers* Court surveyed Maryland cases that are pertinent to the question of force and constructive force. The Court observed that Maryland cases have "recognize[d] the notion of force as coextensive with resistence on the part of the victim and also emphasize[d] that resistance is relative and should be measured by the fact-finder." *Id*. at 468. Indeed, "[f]orce," the Court understood, had been "recognized as essentially a subjective element as measured, in part, by the victim's resistence, because 'it cannot be said that all women would use the same amount of resistence , or that every woman would act in the same way at all times." *Id*. at 469 (quoting *Hill v. State*, 143 Md. 358, 367 (1923)). "Force" can be a nuanced and fact-bound concept, however. As noted by the *Mayers* Court:

> [O]ur jurisprudence recognizes that the measure of an assailant's use of force or the threat of force is within the province of the trier-of-fact; it is not our role to retry the case or circumvent the fact-finder just because in other cases we, or our colleagues on the intermediate appellate court, were presented with physical violence perpetrated against the victim.

12

417 Md. at 475. In *Martin v. State*, 113 Md. App. 190, 246-47 (1996) (citation omitted),

this Court instructed that

> [t]o constitute a rape or a sexual offense . . . the conduct need not always be so blatantly "forceful." Rather, the perpetrator's creation of certain conditions may, depending on the circumstances, obviate the need for such outward expressions of force. . . .
>
> The law is clear that "no particular amount of force, either actual or constructive, is required to constitute rape. Necessarily, that fact must depend upon the prevailing circumstances. In light of the myriad of circumstances that can arise, the reasonableness of a victim's nonresistance is usually best left to the fact finder.

The defendant in *Mayers* also sought to persuade the Court of Appeals by citing to

this Court's decision in *Goldberg*. Writing for Court of Appeals, Judge Battaglia rejected

the strength of that authority on the record before the *Mayers* Court:

> [In *Goldberg*] there was nothing in the record demonstrating that the victim offered any resistance and the prosecuting witness testified that the defendant did not threaten her in any way. In contrast, however, in the present case, [the complainant] resisted both verbally, by saying "no" over and over again, and also physically, by pushing Mayers's hands away from her breast and vagina, while experiencing fear that Mayers would force her to perform fellatio on him or that she would contract a sexually transmitted disease in the absence of a condom.
>
> In the present case, we conclude that a reasonable jury could have determined that Mayers employed force or the threat of force to perpetrate the act of cunnilingus on [the complainant]. In terms of force, [the complainant] verbally resisted Mayers's advances, saying "no" over and over again. When Mayers would not relent, [the complainant] also

13

physically resisted, pushing his hands away from her breast and vagina. [The complainant] further testified that Mayers took off her shorts by "getting on top of her," evidence of the application of force beyond that which is part of the sexual act itself.

Furthermore, [the complainant] testified regarding her fear of Mayers. [The complainant] recounted that she was awakened from sleep, having complained of being ill, and also that Mayers smelled of alcohol and marijuana. [The complainant] further testified that she repeatedly said "no," but that Mayers would not relent, and also physically resisted, to no avail, such that she feared that Mayers would use her for his own sexual gratification regardless of her unwillingness. Finally, [the complainant] recounted that she was "horrifically scared" and paralyzed by the fear of contracting a sexually transmitted disease or being forced to perform fellatio on him. Based upon all of these circumstances, a rational jury certainly could conclude that Mayers perpetrated the act of cunnilingus on [the complainant] by force or threats of force. Therefore, Mayers's conviction must stand.

417 Md. at 475-76.

Although the complainant's resistance was not as strenuous as was the victim's in *Mayers*, and the instant case presents a closer factual scenario than does the record in *Mayers*, we nevertheless conclude that the evidence in the case before us is sufficient to permit the court, sitting as the trier-of-fact, to find that appellant exercised "force, or the threat of force," and that D did not consent to the intercourse. Appellant claimed that he was a "monster," and told D that she would be "fucked." His initial statements were met with shock. Appellant exercised actual force and held D's arms as he got on top of her.

14

She "squirm[ed]"as appellant pulled off her pants.  Appellant apologized to D after the act, and reiterated his apology during a conversation with D.

The "creation of certain conditions may, depending on the circumstances, make unnecessary the need for outward expressions of force."  *Robinson v. State*, 151 Md. App. 384, 398-99, *cert. denied*, 377 Md. 276 (2003).  We believe that the conditions and appellant's words and actions present in the case before us present a mosaic of facts that are sufficient to sustain the court's findings.

**JUDGMENT AFFIRMED.**

**APPELLANT TO PAY COSTS.**