JOHN M. McENTIRE AND THOMAS E. WEEMS
*v.* STATE OF MARYLAND

[No. 330, Initial Term, 1967.]

*Decided November 21, 1967.*

The cause was argued before MURPHY, C. J., and ANDERSON, MORTON, ORTH, and THOMPSON, JJ.

*James W. McAllister* for appellant McEntire; and *Samuel S. Field, III,* with whom was *Richard K. Jacobsen* on the brief, for appellant Weems.

*Anthony M. Carey, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General,* and *Charles E. Moylan, Jr., State's Attorney for Baltimore City,* on the brief, for appellee.

PER CURIAM.

The appellants were convicted on October 25, 1966 in the Criminal Court of Baltimore, Judge J. Gilbert Prendergast presiding without a jury, of rape and burglary. Each received a sentence of life imprisonment for the rape conviction and five years for the burglary conviction, the latter sentences to run concurrently with the life imprisonment.

Mrs. Ruby Warren testified that she was awakened in her first floor apartment at 1000 Shellbank Road in Baltimore in

the early morning hours of June 17, 1966 by the presence of two men in her room. Both intruders had butcher knives, which Mrs. Warren recognized as knives from her own kitchen. Although the lights were off in her room, the bathroom light was on and the bathroom door was partially open. One of the men (identified by the witness at the trial as the appellant, Weems) got into bed with her and while holding a knife to her neck "began to have sex," while the other man (identified by the witness at the trial as the appellant, McEntire) went to the side of the bed and held his knife to her throat. The witness testified that at the time of the offense Weems was wearing green pants, a white T-shirt and a maroon jacket, and that McEntire had on gray pants, a white T-shirt, a cream jacket and cream cap. In answer to a direct question from the State: "He [Weems] had sexual intercourse with you?", the witness aswered "Yes." She said twice on the stand that Weems had "sex relations" with her. After Weems had sexual intercourse with her, McEntire said, "it's my turn now." Mrs. Warren asked Weems to get McEntire to leave the room, whereupon both appellants went outside her room and she locked the door and called for help. A few moments later she heard two men in the hall talking to her daughter.

Before she had gone to bed the front door and living room window had been locked. Her bedroom window and the windows in the two bedrooms of the children were open. After the incident she noticed that the screen in her son's bedroom was up, although it had been down when she went to bed.

Mrs. Warren's daughter testified that she was awakened by her mother's calls for help and went out into the hall where she saw two men, whom she identified at the trial as the appellants. Both men were in possession of butcher knives. She had known Weems in school and recognized him in the hall. She knew him as Tony. Weems was wearing green pants, a white shirt and a maroon jacket. McEntire had on a cream jacket and cap. The two men then left, and the police arrived about five minutes later.

At this point in the trial the following colloquy occurred between the court and the Assistant State's Attorney:

452

"THE COURT: Counsel I think the Judge's role is to stay out of the trial of a criminal case as much as possible. Now she has left the courtroom as have all the other witnesses. I'm not a little concerned about the testimony on behalf of the first witness, the victim of the alleged assault, alleged victim, Mrs. Ruby Warren as to the act that took place—whether the State wishes to recall her and clarify what happened during the alleged assault and rape. She has testified as I heard it they had sex, but you have not proven an act of penetration.

MR. PEREGOFF: I then asked—

THE COURT: There is some doubt about it.

MR. PEREGOFF: Maybe we ought to straighten it up for the record. My impression of the testimony was that she had sexual intercourse."

The State was then allowed, over objection of both appellants, to recall Mrs. Warren who testified that Weems "put his penis in my vagina."

Sergeant Cooper of the Southern District police station testified that he arrested Weems at 9:45 A.M. on June 17th, and at that time Weems was wearing green pants and a white T-shirt. When told by Sergeant Cooper that it was chilly outside, he went into his bedroom and returned wearing a maroon jacket.

The Appellants did not testify and called no witnesses to their defense.

The appellants contend that the trial court committed reversible error in suggesting and permitting the recall of the prosecuting witness, and that without that recall testimony the State had failed to prove penetration, a necessary element of the crime. It is true that penetration must be proved before there can be a conviction of rape. *Jackson v. State,* 214 Md. 454. However, the Court of Appeals has held that penetration may be shown by testimony from the prosecuting witness, that the defendant had "sexual intercourse" with her. *Robert v. State,* 220 Md. 159. The witness so testified here when originally on the stand and twice stated as well that the appellant Weems had had "sex relations" with her. Therefore, since the testimony

acquired on recall was only cumulative in nature, and the evidence produced originally was sufficient, the admission of the evidence on the second examination of Mrs. Warren, even if erroneous, was not prejudicial and does not call for a reversal. *Schroder v. State,* 206 Md. 261. In any event, we feel the trial court did not commit error in initiating and permitting the recall of Mrs. Warren. Clearly, if the action had originated with the Assistant State's Attorney, the question of the recall of a witness would have been within the court's discretion. We find no abuse present here. *Tingler and Wright v. State,* 1 Md. App. 389. In *Schroder v. State, supra,* the Court of Appeals affirmed the lower court's action of ordering on its own initiative a continuance and requiring additional proof by the State of one element of its case. We find no error in the trial judge's action in the instant case.

The sufficiency of the evidence to sustain the conviction of rape is questioned by the appellants. Cases tried by a court, without a jury, may be reviewed on both the law and evidence, but a verdict on the evidence will not be set aside unless clearly erroneous. *McFadden v. State,* 1 Md. App. 511; *Levin v. State,* 1 Md. App. 139. As we have stated above, the proof of penetration by Weems was sufficient even without the testimony of Mrs. Warren when she was recalled. As to McEntire's status in the crime, there was testimony of Mrs. Warren from which it could be properly concluded that he was in sufficient "proximity or contiguity in concert with the actual perpetrator of the offense for the purpose of assisting, if necessary," so as to be a principal in the second degree. *Sanders v. State,* 1 Md. App. 630, 636. A principal in the second degree can be found guilty of the offense the actual perpetrator thereof commits. *Vincent v. State,* 220 Md. 232. The identification of a defendant by the victim alone is sufficient to establish identity. *Reed v. State,* 1 Md. App. 662. Here that identification was corroborated by the testimony of Mrs. Warren's daughter and the apparel of the appellants. We feel the court below was not clearly erroneous in finding the appellants guilty of rape.[1] Md. Rule, 1086.

---

1. Even though neither appellant raised the question of the sufficiency of the evidence in the burglary convictions, we have

Appellant McEntire inferentially raises the argument that the court should require more than two witnesses to convict a defendant in a capital case. He cites no authority and we have found none in Maryland which places on the State a greater burden of proof in such cases than in others.

*Judgments affirmed.*

reviewed the evidence therein and find it was sufficient to sustain those convictions.