NORMAN A. WINEGAN *v.* STATE OF MARYLAND

[No. 550, September Term, 1969.]

*Decided August 18, 1970.*

The cause was argued before MURPHY, C.J., and ANDERSON, MORTON, ORTH, and THOMPSON, JJ.

*Frank Sacks* for appellant.

*Francis X. Pugh, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Charles E. Moylan, Jr., State's Attorney for Baltimore City,* and *Allen Horwitz* and *Sandra O'Connor, Assistant State's Attorneys for Baltimore City,* on the brief, for appellee.

THOMPSON, J., delivered the opinion of the Court.

Norman Winegan, the appellant, was convicted by a jury in the Criminal Court of Baltimore of rape and perverted practices. He was sentenced to a term of 20 years for the rape and ten years consecutive for the perverted practices. He contends the evidence was insufficient to support the two convictions, that the court abused its discretion in permitting the State to call the appellant for additional cross-examination, that the judge improperly communicated with the jury in his absence, and that the court improperly refused a proffered instruction.

The prosecutrix, 17 year old Ann Elizabeth Brooks, testified that at or about 2:30 P.M. on Sunday, June 8, 1969, while walking home from a drug store in the 2900 block of Duvall and Garrison Streets in Baltimore, she was approached by a male stranger, later identified as appellant, Norman Winegan. She was directed to go with him and was told if she did not, he would "destroy" her; that she continued to walk, but "he told me to go nowhere because if I did he may destroy me." Miss Brooks said she complied upon seeing his left hand in his pants pocket, and believing he was carrying a gun. She testified he took hold of her arm and they walked five or six blocks to his boarding house at 4017 Bonner Road, passing people on the street, but that she did not indicate to anyone she needed help because she was "afraid he had a gun"; he was still holding his left hand in his pants pocket.

After she followed him to his third floor room in the boarding house, Miss Brooks stated appellant made her pull off her clothes and get on the bed and that then he undressed himself. She was on her menstrual cycle and wearing a tampon; that appellant removed the tampon from her body and inserted his penis into her vagina. Within a couple of minutes she pushed him off and started crying, asking him to let her go and he would not. She then said the appellant told her "if you don't do that, do this, and he made me suck him" during which he ejac-

ulated. At one point when she refused him, she said he reached under the mattress "as if reaching for a gun." She never at any time saw a gun. She testified that after she had performed the perverted act he let her get dressed but stated he would not let her go if she didn't repeat the performance. While she performed fellatio upon him this time, she said appellant fell asleep on the bed; and she took her shoes off and left the room. She testified before she left the room, she put the used tampon in her pocketbook and inserted a clean one. When she reached the first floor, she told the landlady what had happened and the landlady's reply was that "she didn't know anything about it, she just roomed there." The landlady, Mrs. White, testified she saw Miss Brooks when she left, carrying her shoes in her hand but that she had no conversation whatever with Miss Brooks.

Miss Brooks then took a cab home where she told her uncle about the incident and he called the police. When the police arrived, she was crying. She took them to appellant's boarding house where the officers found him asleep in bed in the nude, and there arrested him. When called upstairs by the officers, Miss Brooks made identification. Her testimony that when appellant awoke and said "I'm sorry" was corroborated by the officer, but the officer was not certain to whom the appellant was speaking—to the girl or to the officers. The officers did not locate a gun in the room.

Dr. Joseph Boggio testified he examined the victim at 6:15 P.M. and stated from his report the rape occurred between 3:00 and 3:30 P.M. the same day. His examination revealed a scant bloody discharge which indicated to him her menstrual period was nearing the end. No sperm was present. He stated there could have been penetration and no sperm. The examination revealed she was not a virgin and had had intercourse many times.[1] He could not determine whether or not she had sexual relations within a period of several hours. There was no evidence of any bruises or scratches on the prosecutrix's body.

---

1. The prosecutrix was the mother of one illegitimate child.

Beatrice White, a witness for the defense and appellant's landlady, testified she had not known the appellant prior to his moving into the boarding house a month before the alleged crimes. Mrs. White stated the prosecutrix was smiling when she and appellant reached the front porch of her house where Mrs. White was sitting and that appellant spoke to her (Mrs. White) and said to Miss Brooks "this is my landlady." She stated that a little dog had followed Miss Brooks and appellant to the house, and when the couple went upstairs to appellant's room, Mrs. White's grandchildren played with the dog. Mrs. White did not hear any crying or screaming and testified that when Miss Brooks left she did so without saying a word, and, with the exception of carrying her shoes in her hand, she looked the same as when she arrived.

The appellant, 29 years of age, 6' 3" in height and weighing 190 pounds,[2] took the stand in his own defense. On cross-examination, he admitted convictions for unauthorized use of a motor vehicle, five separate minor assaults upon women and assault upon a police officer. He stated that he met the prosecutrix on June 8, 1969, somewhere between 2:45 and 3:00 P.M.; that the meeting was of a friendly nature and that she went with him because she wanted to and not because she was forced. He testified he lost interest in sexual intercourse when he saw she was menstruating. He denied fellatio occurred.

### I Sufficiency of Evidence as to Rape

While we are frequently called upon to review the sufficiency of the evidence in rape cases, most of them are so clear it is seldom necessary to review the law in any great detail; however, two cases recently have required a detailed review, *Walter v. State,* 9 Md. App. 385, 264 A. 2d 882 and *Rice v. State,* 9 Md. App. 552. In both we held where the victim's story could not be corroborated

---

2. There was no mention of the size of the prosecutrix other than what was stated by the trial judge: "A man much larger than she is ...."

by wounds, bruises or disordered clothing, the lack of consent could be shown by fear based upon reasonable apprehension. The rule requiring the apprehension be reasonable was first enunciated in Maryland in *Hazel v. State*, 221 Md. 464, 469, 157 A. 2d 922:

> "If the acts and threats of the defendant were reasonably calculated to create in the mind of the victim—having regard to the circumstances in which she was placed—a real apprehension, due to fear, of imminent bodily harm, serious enough to impair or overcome her will to resist, then such acts and threats are the equivalent of force."

The rule of reason, as we shall call it, was reiterated, either expressly or impliedly, by us in *Walter v. State, supra* and *Rice v. State, supra*. It is expressly supported by several cases throughout the country. *State v. Beck*, 368 S.W.2d 490 (Mo. S. Ct. 1963); *People v. Hinton*, 333 P. 2d 822 (Cal. Dist. Ct. App. 1959); *Johnson v. State*, 76 So. 2d 841 (Miss. S. Ct. 1955); *Longoria v. State*, 265 S.W.2d 826 (Tex. Crim. App. 1954); *People v. Cassandras*, 188 P. 2d 546 (Cal. Dist. Ct. App. 1948); *Cascio v. State*, 25 N.W.2d 897 (Neb. S. Ct. 1947); *Davis v. Commonwealth*, 45 S.E.2d 167 (Va. S. Ct. App. 1947); *State v. Dill*, 40 A. 2d 443 (Del. 1944); *State v. Hoffman*, 280 N. W. 357 (Wis. S. Ct. 1938); *Kirby v. State*, 59 So. 374 (Ala. Ct. App. 1912); and *Doyle v. State*, 22 So. 272 (Fla. S. Ct. 1897). Doubtless there are many other cases where the fear appeared to be so reasonable there was no necessity to discuss the rule. We have found no case which directly held to the contrary. As with many legal rules, this one is easier to state than to apply. In approaching the question we must bear in mind the presumption of innocence with which every accused is clothed, and the ease with which a woman can make the charge of rape a capital crime, and the difficulty of disproving the charge, especially if sexual intercourse has occurred.

The prosecutrix was approached on a public street in broad daylight where many people were present; during the several block walk to the appellant's boarding house other persons were observed. She made no outcry; although she saw no gun she thought he had one in his pocket and apparently a second gun under his mattress. He never at any time claimed to have a gun and none was found by the police. According to her testimony, she followed him up the steps to his third floor room. She also said he fell asleep while she was committing a second act of fellatio. She calmly left the room of the boarding house after taking time to fully clothe herself and replace the tampon. If under all these circumstances she had sufficient fear to cause her to yield, we think the conviction must fall under the rule we have stated—where sexual intercourse occurs without actual force and without resistance because of fear, that fear must be a reasonable fear. We think the fear, if actually present, was so unreasonable as to preclude a conviction for rape and the trial judge should have granted the motion to acquit. We see no need to grant a new trial since the prosecutrix has already committed herself to one story and there is no possibility the facts necessary to prove a rape could be supplied by the testimony of others.

II  Sufficiency of the Evidence as to Perverted Practice

In reversing the rape conviction, we have accepted, as we must, the story of the prosecutrix as to the acts of the appellant. We did not accept her subjective statement of the overpowering fear, necessary to support a conviction of rape, because the acts she described were not sufficient under the circumstances to inspire such fear. This provides no reason for us not to accept the findings of the jury that the perverted practices actually occurred. We cannot say there was no evidence legally sufficient to support the verdict as to perverted practices. Md. Code, Art. 27, Sec. 554. *Williams v. State*, 5 Md. App. 450, 247 A. 2d 731. There was some evidence the prosecutrix did not willingly perform fellatio. *Rice v. State, supra.* We

think it in the interest of justice under the unique factual posture of this case to vacate the ten year sentence on the perverted practice conviction and remand the case so that the trial judge may impose his sentence for this offense in light of the reversal, without a new trial, of the rape conviction.

### III  Recall of Appellant to Witness Stand

The action of the trial court in permitting the recall of a witness to the stand is entirely within its sound discretion. *Gardner v. State,* 8 Md. App. 694, 261 A. 2d 799 and *McEntire v. State,* 2 Md. App. 449, 235 A. 2d 311. We see no abuse of discretion simply because the witness involved happened to be the accused.

### IV  Communication with the Jury

Soon after the jury retired to consider its verdict, the foreman advised the bailiff the jury could not agree on a verdict. In the absence of counsel and the accused, the trial judge instructed the bailiff to tell the jury to continue their deliberation. Although the question is borderline, we regard the answer to the question, under the particular circumstances, as a nonprejudicial communication instead of an instruction under *State v. Saul,* 258 Md. 100, 265 A. 2d 178. See also *Saul v. State,* 6 Md. App. 540, 252 A. 2d 282, *Sweeney v. State,* 6 Md. App. 431, 252 A. 2d 9.

We note, however, the preferred practice is that any communication from judge to jury, not related to mere physical requirements of the jurors, should be made only in open court to the complete jury, in the presence of the accused and in the presence of counsel. 41 A.L.R. 2d 266.

### V  Failure to Call a Witness

Winegan alleges error because the trial judge refused an instruction that since Officer Green had not been called to testify the jury could infer that had he been called his testimony would have been adverse to the State. There is nothing in the record to suggest Officer Green had any information not known to the officer who did testify, de-

spite appellant's suggestion to the contrary. Thus the testimony would have been merely cumulative and, therefore, the instruction was properly denied. *Nelson v. State,* 5 Md. App. 109, 245 A. 2d 606.

> *Judgment as to Indictment No. 4269 (Perverted Practice) affirmed, except as to the sentence; sentence vacated and case remanded for the imposition of sentence in accordance with this opinion;*
>
> *Judgment as to Indictment No. 4268 (Rape) reversed without a new trial.*