802 F.2d 1532
 21 Fed. R. Evid. Serv. 1237
 Charles E. HALEY, Grayson Shirley, Farrell L. Hunt, d/b/a
Hunt Trucking Company, Cecil L. Hunt, d/b/a Hunt
Trucking Company, Appellees,
v.
BLUE RIDGE TRANSFER CO., INCORPORATED, Appellant.
 No. 85-2241.
 United States Court of Appeals,
Fourth Circuit.
 Argued May 8, 1986.
Decided Oct. 17, 1986.
 
 Peter L. Murphy (McNair, Glenn, Konduros, Corley, Singletary, Porter & Dibble, P.A., Columbia, S.C., on brief), for appellant.
 J. Edward Bell, III (Bell, Floyd, Belk & Jernigan, Florence, S.C., on brief), for appellees.
 Before MURNAGHAN and SPROUSE, Circuit Judges, and HAYNSWORTH, Senior Circuit Judge.
 SPROUSE, Circuit Judge:
 
 
 1
 Blue Ridge Transfer Company, an interstate trucking company, appeals from a judgment entered after a jury trial in favor of plaintiffs, Charles E. Haley, Grayson Shirley, Farrell L. Hunt, and Cecil L. Hunt. The plaintiffs were independent truck drivers who, pursuant to contract, purchased their trucks from Blue Ridge. The sales contracts provided principally that Blue Ridge would assign the plaintiffs interstate trucking runs and that payment on the trucks would be made from income received from these trucking assignments. The plaintiffs apparently established to the jury's satisfaction that Blue Ridge breached the contracts by favoring its salaried company drivers in trucking assignments and by purposefully acting in other ways that prevented the plaintiffs from realizing the profits contemplated by the contracts. Blue Ridge, however, contended in a motion for a new trial and now asserts on appeal that during the trial a nonjuror made an extraneous communication to the jury which could have affected the outcome of the jury's deliberations. The trial court disagreed and denied Blue Ridge's motion for a new trial. We reverse on the ground that there is a reasonable possibility that the jury's verdict was influenced by an unauthorized communication.
 
 I.
 
 2
 A jury of thirteen persons (twelve regular jurors and one alternate) was chosen in this case on January 7, 1985, approximately one month prior to the date that trial was scheduled to begin. At some point after the selection of the jury, but before the commencement of trial, the district court excused one of the chosen jurors from service. The court did not notify the parties of this action, and on February 4, 1985, the day trial began, it did not immediately recall excusing the juror.
 
 
 3
 On the morning of February 4, 1985, prior to the beginning of trial, an individual who had been summoned for jury duty in the same building, but in another trial court, was mistakenly directed by security personnel to the jury room where the jurors previously chosen for this case were assembled. The individual (hereafter referred to as the "nonjuror") took his place among the twelve jurors present; the mistake was not noticed, apparently because thirteen jurors were chosen originally and no one had reason to suspect that the same thirteen were not presently seated. Trial began with the jury thus composed. The nonjuror remained with the jury throughout the first day of the trial, which included swearing the jury, the parties' opening statements, and the testimony of the plaintiffs' first witness. Twice the nonjuror retired with the jury to the jury room--once each during the morning and afternoon recesses. At the end of the day, the court discovered the error. The judge questioned the nonjuror outside the presence of the jury and excused him from further service. The trial continued for eleven more days and the jury returned a verdict in favor of the plaintiffs in the aggregate amount of $338,000. Judgment was entered on February 20, 1985.
 
 
 4
 Blue Ridge filed a timely motion for a new trial. Attached to the motion was an affidavit of one of the regular jurors which averred that during the morning recess on the first day of trial the nonjuror made prejudicial remarks about the case in the presence of the entire jury. The affidavit stated, in pertinent part:
 
 
 5
 On the first day of the trial, there was present with all of the jurors a gentleman whose name I do not recall. I remember that he ... joined the rest of the jury in the jury room prior to the start of the trial, sat in the jury box with all of us during the first day's testimony and was with the jury in the jury room during the morning and afternoon breaks. This man did not return to the jury after the first day.
 
 
 6
 During the first break in the morning, after approximately one hour of testimony from Mr. Haley on direct examination, the gentleman described above remarked to the entire jury, all of whom appeared to me to be listening, that he had worked around truckers a lot and that he knew that what the plaintiff was testifying was true, that trucking companies really do treat truckers badly. Further, he remarked that no matter what the company said, he would be against the company. One female juror ... replied that she was glad this gentleman was on the jury as he would be a great help.
 
 
 7
 Neither the court nor any counsel was aware of the nonjuror's statements until the affiant contacted Blue Ridge's counsel after the verdict was returned and the jury dismissed. In ruling on Blue Ridge's motion, the court concluded that the nonjuror's remarks were harmless and it allowed the jury's verdict to stand.[1] We disagree, reverse, and remand for a new trial.
 
 II.
 
 8
 It is fundamental that every litigant who is entitled to trial by jury is entitled to an impartial jury, free to the furthest extent practicable from extraneous influences that may subvert the fact-finding process. Because an impartial jury is obviously the touchstone of a fair trial,[2] courts throughout modern history have labored to safeguard sitting jurors from improper contacts and advances by third parties.
 
 
 9
 In an early instance of this recurring problem, the Supreme Court adopted the rule that unauthorized communications to jurors are "forbidden," and unless determined to have been harmless, require the court to order a new trial. Mattox v. United States, 146 U.S. 140, 150, 13 S.Ct. 50, 53, 36 L.Ed. 917 (1892). The rule of Mattox was developed further in Remmer v. United States, 347 U.S. 227, 74 S.Ct. 450, 98 L.Ed. 654 (1954), where the Court directed that private communications to jurors during trial should be deemed "presumptively prejudicial" with the burden of rebuttal resting "heavily" on the party supporting the jury's verdict. Id. at 229, 74 S.Ct. at 451. Remmer also established the requirement of a post-trial evidentiary hearing in which the prevailing party has the opportunity and burden of rebutting the presumption of juror prejudice.[3] Id. at 229-30, 74 S.Ct. at 450-51; see also Smith v. Phillips, 455 U.S. 209, 217, 102 S.Ct. 940, 946, 71 L.Ed.2d 78 (1982).
 
 
 10
 Although Mattox and Remmer were both criminal cases, their doctrine of presumed prejudice has been applied no less forcefully in civil cases in the federal courts.[4] See Hobson v. Wilson, 737 F.2d 1 (D.C.Cir.1984); cert. denied, --- U.S. ----, 105 S.Ct. 1843, 85 L.Ed.2d 142 (1985) (section 1985 action); Rinker v. County of Napa, 724 F.2d 1352 (9th Cir.1983) (section 1983 action); Krause v. Rhodes, 570 F.2d 563 (6th Cir.1977), cert. denied, 435 U.S. 924, 98 S.Ct. 1488, 55 L.Ed.2d 517 (1978) (section 1983 action); United States v. Harry Barfield Co., 359 F.2d 120 (5th Cir.1966) (taxpayer refund suit); Link v. Mercedes-Benx of North America, Inc., 618 F.Supp. 679 (E.D.Pa.1985) (civil antitrust action). Moreover, we find nothing in post-Remmer Supreme Court decisions that limits the federal district court's obligation to invoke the presumption of prejudice when sitting jurors have been exposed to unauthorized, extraneous information that is of sufficiently prejudicial magnitude.[5]III.
 
 
 11
 In ruling on Blue Ridge's challenge to the integrity of the verdict, the trial court framed the issue as follows:
 
 
 12
 When, as here, the Court is presented with a challenge to a verdict based upon the testimony of a juror, two questions are presented for determination. First, is the juror's testimony competent to impeach the verdict? Second, assuming the evidence is competent does it establish that the alleged impropriety was prejudicial? (citations omitted).
 
 
 13
 The first issue--whether the juror's testimony as represented by her affidavit was competent to impeach the verdict--was properly raised and correctly decided by the trial court. It held that Rule 606(b)[6] did not bar the juror's testimony.[7] However, the second issue considered--whether the juror's affidavit established that the alleged impropriety was prejudicial--was incorrectly stated and incorrectly decided by the trial court. At this juncture, the court should have simply invoked the Remmer presumption that the nonjuror's comments prejudicially affected the jury's verdict. Once invoked, the court should have gone on to consider whether the plaintiffs' evidence relating to the probable effect of the nonjuror's communication was sufficient to rebut the presumption. It was error not to employ these procedures, and on the facts of this case Remmer compels the conclusion that Blue Ridge is entitled to a new trial.
 
 
 14
 To reiterate, and as the trial court correctly observed, the competency of juror testimony must first be tested under Rule 606(b).[8] The rule presented no problem here because the affidavit simply related the nonjuror's conduct without reference to any phase of the jury's deliberation. Since we agree that the juror's affidavit was competent evidence under Rule 606(b), the next question is whether it presented a sufficient basis for invocation of the presumption that the communication was prejudicial.[9] This, in turn, leads to the third and most crucial problem presented by Blue Ridge's motion for a new trial--was the presumption rebutted?
 
 
 15
 In viewing rebuttal evidence we are guided by the rule that the party benefitting from the verdict bears a heavy burden to establish the harmlessness of an unauthorized jury communication.[10] See Mattox, 146 U.S. at 150, 13 S.Ct. at 53; Remmer, 347 U.S. at 229, 74 S.Ct. at 451. In recognition of the prevailing party's heavy burden, we have held that a new trial must be granted if there remains a reasonable possibility that the jury's verdict was influenced by an improper communication.[11] United States v. Barnes, 747 F.2d 246 (4th Cir.1984). Here, the facts set forth in the juror's affidavit constitute the only record evidence relating to the nonjuror's communication. Our principal chore then is to determine if the presumption raised by those facts is rebutted by the inferences flowing from them.[12]
 
 
 16
 The court below, after discussing the evidence presented by the affidavit, denied Blue Ridge's motion for a new trial because it was "not convinced that the [nonjuror's] remark adversely affected the verdict." In this the court erred--whether or not it utilized the correct decisional framework. The evidence considered here simply was not sufficient to carry the plaintiffs' burden of rebuttal.
 
 
 17
 As we have held, the general standard for determining if the prevailing party has carried its burden of proving the jury communication non-prejudicial is whether, after the presumption has been invoked and the rebuttal evidence offered, there remains "a reasonable possibility that the jury's verdict was influenced by the material that improperly came before it." Barnes, 747 F.2d at 250. Viewing the nonjuror's remarks in context, we feel strongly that the communication created at least a reasonable possibility of prejudicing the jury against Blue Ridge. The statement was uttered before the entire jury in the sheltered environment of the jury room by an individual who, at the time, was perceived to be a properly selected member of the panel. We cannot, in retrospect, assume that the jurors deemed the nonjuror's commentary irrelevant or inconsequential. Indeed, the affidavit confirms that it received an enthusiastic response from at least one juror who ultimately participated in deciding the case.
 
 
 18
 The trial court based its conclusion that the extraneous communication was harmless on three subordinate findings of fact. First, the court found that the nonjuror's remarks "did not refer to the facts of the case." Our review, however, indicates that the plaintiffs' case depended largely on convincing the jurors that Blue Ridge had treated the independent truckers unfairly. The nonjuror's assertion of personal knowledge that "trucking companies really do treat truckers badly" went directly to this ultimate factual issue. Next, the court observed that the nonjuror's remarks were made on the first day of a twelve day trial and not during deliberations. While it is true that the nonjuror's remarks came early on in the trial, his statement that he would "be against the company" regardless of the evidence presented demonstrates an unwavering bias, and it is certainly within the realm of reasonable possibility that the nonjuror's obdurate beliefs cast a lasting impression on the panel. Finally, the district court noted that the juror's affidavit did not "aver that the affiant or any juror was influenced by the remark." But, as noted above, jurors are not competent to testify, by way of affidavit or otherwise, to the effect of an extraneous communication on their deliberations. United States v. Duncan, 598 F.2d 839, 866 (4th Cir.), cert. denied, 444 U.S. 871, 100 S.Ct. 148, 62 L.Ed.2d 96 (1979); Fed. Rule Evid. 606(b). Neither Blue Ridge nor the affiant can be faulted for failing to proffer inadmissible evidence--especially when the burden of rebuttal should have been placed upon the plaintiffs.
 
 
 19
 We feel it unlikely that Blue Ridge received a fair trial by an impartial jury. At a minimum, the nonjuror's remarks gave rise to a reasonable possibility of resultant jury prejudice, and on the strength of the appeal record, the plaintiffs did not carry their burden of rebuttal.
 
 
 20
 For the above reasons, we reverse and remand for a new trial.
 
 
 21
 REVERSED AND REMANDED.
 
 
 
 [1]
 At the outset, we note that the district court docket sheet in this case indicates that a post-trial evidentiary hearing was held on Blue Ridge's motion. Unfortunately, the record on appeal does not contain a transcript of the testimony presented at the hearing, and neither the court's order nor the parties' briefs contain any detail as to what evidence or other material was presented or considered at the hearing. Our review, therefore, is limited to the court's ultimate conclusion, and we must base our analysis on the reasoning set forth in its order. As will be seen, post-verdict allegations of juror prejudice caused by unauthorized, extraneous communications during trial raise serious questions about the fairness of the result, and in most cases require a probing factual inquiry into the substance of the allegations--an inquiry that is reviewable on appeal
 
 
 [2]
 McDonough Power Equipment v. Greenwood, 464 U.S. 548, 554, 104 S.Ct. 845, 849, 78 L.Ed.2d 683 (1984)
 
 
 [3]
 Appellate review is obviously inhibited where, as here, a detailed record of the post-trial hearing is not developed
 
 
 [4]
 The civil litigant's right to an impartial jury inheres in the seventh amendment's preservation of a "right to trial by jury" and the fifth amendment's guarantee of due process. U.S. Const. amend. VII; U.S. Const. amend. V; see McCoy v. Goldston, 652 F.2d 654, 657 (6th Cir.1981); Kiernan v. Van Schraik, 347 F.2d 775, 778 (3d. Cir.1965)
 
 
 [5]
 In Smith v. Phillips, 455 U.S. 209, 102 S.Ct. 940, 71 L.Ed.2d 78 (1982), the Court held, in a habeas corpus proceeding, that the due process clause of the fourteenth amendment does not require state courts to order a new trial upon a finding of imputed juror bias--where no actual bias had been proved by the criminal defendant. The Court concluded that due process in state trial procedures requires, at a minimum, that a criminal defendant claiming juror bias be granted an opportunity to prove actual bias at a post-trial hearing. Id. at 217-18, 102 S.Ct. at 946
 Although we have, of course, followed the Phillips "actual bias" standard in appropriate types of federal cases, United States v. Malloy, 758 F.2d 979 (4th Cir.1985), cert. denied, --- U.S. ----, 106 S.Ct. 535, 88 L.Ed.2d 465 (1986); United States v. Billups, 692 F.2d 320 (4th Cir.1982), cert. denied, 464 U.S. 820, 104 S.Ct. 84, 78 L.Ed.2d 93 (1983), we find it inapplicable here. Phillips and all of our cases following it are distinguishable from the present case because they address intrinsic juror bias subject to revelation during voir dire. "Voir dire has long been recognized as an effective method of rooting out such bias, especially when conducted in a careful and thoroughgoing manner." Patton v. Yount, 467 U.S. 1025, 1038 n. 13, 104 S.Ct. 2885, 2892, 81 L.Ed.2d 847 (1984) (quoting In re Application of National Broadcasting Co., 653 F.2d 609, 617 (D.C.Cir.1981)). We see a basic difference between the beliefs, feelings, preferences, and general personality traits that every juror carries into the courtroom and the power of after-acquired extraneous information (be it in the form of threats, bribe offers, lies or as in the present case simple opinions) to infect and extirpate impartiality from the fact-finding process. Additionally, proof of "actual" prejudice would have been impossible to uncover in this case without contravening Federal Rule of Evidence 606(b).
 A number of other circuits have recently treated the basic issue of presumed jury prejudice. Although not always stating analyses identical to the ones that we apply, their opinions advance the same rationale. See United States ex rel Buckhana v. Lane, 787 F.2d 230 (7th Cir.1986); United States v. Heller, 785 F.2d 1524 (11th Cir.1986); United States v. Robinson, 756 F.2d 56 (8th Cir.1985); United States v. Weiss, 752 F.2d 777 (2d Cir.1985); United States v. Webster, 750 F.2d 307 (5th Cir.1984). But see United States v. Pennell, 737 F.2d 521 (6th Cir.1984). For a critical analysis of Pennell, see Casenote, Clean Sweep of the New Trial Safeguard Against Prejudice From Unauthorized Communications with Jury Members, 31 Wayne L.Rev. 1083, 1096-97 (1985).
 
 
 [6]
 Rule 606(b) of the Federal Rules of Evidence provides:
 Inquiry into validity of verdict or indictment. Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon his or any other juror's mind or emotions as influencing him to assent to or dissent from the verdict or indictment or concerning his mental processes in connection therewith, except that a juror may testify on the question whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror. Nor may his affidavit or evidence of any statement by him concerning a matter about which he would be precluded from testifying be received for these purposes.
 
 
 [7]
 It is not possible to glean from the record whether the court heard the juror's live testimony or, by agreement or otherwise, merely considered her sworn statement presented in the affidavit
 
 
 [8]
 The principle that a juror will not be heard to impeach his own verdict occupies a venerable and central role in American jurisprudence. See McDonald v. Pless, 238 U.S. 264, 35 S.Ct. 783, 59 L.Ed. 1300 (1915). The underlying rationale is captured and expanded in Rule 606(b) of the Federal Rules of Evidence. But even under common law application, the adage that "a juror will not be heard to impeach his own verdict" did not convey the full import of the rule. The rule renounced entirely all questioning of jurors concerning their deliberative processes whether the inquiry was directed at impeaching or supporting a verdict previously returned by them. See Mattox v. United States, 146 U.S. at 149, 13 S.Ct. at 53 and cases cited therein
 
 
 [9]
 Courts have generally applied the presumption of prejudice automatically after there has been an unauthorized communication to the jury. See, e.g., Hobson v. Wilson, 737 F.2d 1, 48 (D.C.Cir.1984), cert. denied, --- U.S. ----, 105 S.Ct. 1843, 85 L.Ed.2d 142 (1985); Rinker v. County of Napa, 724 F.2d 1352, 1354 (9th Cir.1983). We recognize, however, that certain kinds of extrajudicial contacts may amount to nothing more than innocuous interventions that simply could not justify a presumption of prejudicial effect. See, e.g., Dennis v. General Electric Corp., 762 F.2d 365, 367 (4th Cir.1985). But the communication in this case surely cannot be characterized as innocuous and we must proceed from the presumption of prejudice
 
 
 [10]
 The rationale for imposing this burden rests in large part on the problem of proof created by Rule 606(b). The rule makes it extremely difficult to offer direct proof that deliberations were not influenced by a stranger's communication, and renders it unlikely that a trial court can determine with any exactness the impact an improper contact has had on the jury. See Heller, 785 F.2d at 1528. For that matter, Rule 606(b) represents a persuasive reason for creating a presumption of prejudice in the first place
 
 
 [11]
 The variety of extrajudicial juror communications is, of course, as wide as human experience. We obviously cannot anticipate the myriad of extraneous communications that could conceivably prejudice the finder of facts. A trial court facing this type of new trial motion can only consider all of the competent evidence objectively in light of common experience, and exercise its reasoned discretion, which is somewhat narrowed under these circumstances
 
 
 [12]
 We are reviewing the denial of a motion for a new trial. When that motion is based on an insufficient evidence argument, the trial court's discretion is, of course, exercised almost solely on its view of the facts. However, when such a motion is based on unauthorized communications to the jury, a trial court necessarily relies more heavily on legal conclusions--primarily the application of Rule 606(b) and the creation and the rebuttal of the presumption of prejudice. Cf. Owen v. Duckworth, 727 F.2d 643, 646 (7th Cir.1984). Accordingly, we have more latitude to review the trial court's conclusion in this context than in other situations. See id.; cf. Marshall v. United States, 360 U.S. 310, 312, 79 S.Ct. 1171, 1172, 3 L.Ed.2d 1250 (1954) (although trial court rulings on juror prejudice are usually entitled to deference, each case must turn on its own special facts)