541 A.2d 1001

**Robert Joseph EADES**

v.

**STATE of Maryland.**

No. 1327, Sept. Term, 1987.

Court of Special Appeals of Maryland.

June 6, 1988.

Peter M. Levin, Assigned Public Defender, Towson (Alan H. Murrell, Public Defender, Baltimore, on the brief), for appellant.

Ann E. Singleton, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., Baltimore, Andrew L. Sonner, State's Atty. for Montgomery County and John J. McCarthy, Asst. State's Atty. for Montgomery County, Rockville, on the brief), for appellee.

Argued before GARRITY, KARWACKI and POLLITT, JJ.

KARWACKI, Judge.

A jury in the Circuit Court for Montgomery County convicted Robert Joseph Eades, the appellant, of robbery and assault with intent to rob. Appellant moved for a new trial pursuant to Rule 4–331, alleging that he was prejudiced by juror misconduct. After a hearing, Judge DeLawrence Beard denied appellant's motion and sentenced him to two concurrent four year terms of imprisonment. Appellant presents three questions for our consideration in this appeal.

I. Was the juror's communication with her husband prejudicial?

II. Was Officer McCauley's rebuttal testimony improperly allowed?

III. Was the evidence legally sufficient to establish appellant's criminal agency?

At approximately 3:00 a.m. on the morning of January 24, 1987, Nat Johnson and Coleman Pensor approached Officer Scott McCauley of the Takoma Park Police Department to report that they had just been robbed of a twenty dollar bill while they were sitting in their parked car on Lee Avenue. They described their three assailants as a black man clothed in a checkered jacket, a heavier black man wearing a brown jacket, and a black woman dressed in a long purple jacket. After they had been robbed, Johnson and Pensor observed their assailants flee into an apartment building on 7513 Maple Avenue.

Several police officers, including Officer McCauley, conducted a floor to floor search of the multi-storied apartment

building on 7513 Maple Avenue, while Johnson and Pensor waited outside, but did not find the assailants. Shortly after one of the officers escorted the victims back to the police station, however, Officer McCauley observed three people who matched the description of the assailants exit the front of the apartment building. McCauley detained the three while another officer brought the victims to the scene. From the back seat of a police cruiser, Johnson and Pensor identified appellant, who was wearing a checkered jacket, and the other two individuals under detention. The three were then arrested. Officer McCauley discovered a twenty dollar bill in the right pocket of the man in the brown jacket when he searched him following his arrest.

At appellant's trial, Charlene Hunt, the woman dressed in the long purple jacket who was arrested along with appellant, testified for the defense that, on January 24, 1987, she, appellant and his brother Anthony Eades accompanied Johnson and Pensor in their vehicle to purchase marijuana. Ms. Hunt claimed that, when they arrived at their destination, Johnson gave appellant twenty dollars to purchase marijuana. Appellant entered an apartment building and returned approximately 10 minutes later, announcing that he had been "beat out" of Johnson's money.

After this incident, Hunt related, Johnson and Pensor brought them back to Lee Avenue. Later that evening, Ms. Hunt learned that appellant had lied to Johnson and Pensor because he still possessed the twenty dollars that he had been given to purchase marijuana.

On cross-examination, the State's Attorney asked Ms. Hunt:

Q. Now, Ms. Hunt, isn't it also a fact that the first words you said to the police officers once they stopped you outside the building there at 7513, the first words you spoke to those officers once you were stopped and placed up against the building was "I knew we were going to get caught?"

Ms. Hunt denied that she made such a statement. The State's Attorney called Officer McCauley as a rebuttal witness after appellant concluded the presentation of his case. Over appellant's objection, Officer McCauley testified that Charlene Hunt exclaimed, "I knew we were going to get caught," immediately after she was stopped.

The jury commenced deliberations on Thursday, July 2, 1987. When the jurors failed to reach a verdict on their first day of deliberations, the court declared a recess for the long holiday weekend. On Monday, July 6, 1987, the jurors resumed their deliberations and found appellant guilty of robbery and assault with intent to rob.

At appellant's request, the court polled the jury after its verdict was announced by the forelady and also asked each juror, individually and out of the presence of the other jurors, whether he or she had discussed the facts of the case or the substance of the jury deliberations with anyone over the course of the weekend. When the court addressed Juror Roseanne Skinner, the following exchange took place:

MRS. SKINNER: No, I did not. At one point I asked my husband[1] whether a statement—because you kept saying—why she could say—it was okay for her to say it, "I knew I had been caught," and my husband said that was a spontaneous utterance.

THE COURT: Okay.

MS. SKINNER: —hearsay.

MR. MONOHAN (Defense Counsel): I do not know if the Court wants me to ask the juror any questions.

THE COURT: No. All right. Thank you, ma'am.

Other than that one statement, nothing substantively about the facts or how the jury was standing?

MS. SKINNER: No.

The State did not object to appellant's request that the court interview the jurors after their verdict had been

---

1. The juror's husband was employed as an Assistant United States Attorney in the District of Columbia.

announced or juror Skinner's account of her discussion with her husband. After the court completed its interview of the jurors, the court clerk harkened them to their verdict as it had been recorded and they unanimously agreed that the verdict was correct.

### Juror Misconduct

Reasoning that the discussion between juror Skinner and her husband "was all but innocuous," the trial court denied appellant's motion for a new trial, despite the fact that the juror had violated the court's instruction that she not discuss the case with anyone during the weekend recess. Appellant asserts that he was prejudiced by the juror's discussion of the case with her husband because the husband's characterization of Ms. Hunt's statement as a "spontaneous utterance" reinforced Officer McCauley's rebuttal testimony concerning the fact that Ms. Hunt did, indeed, exclaim, "I knew we were going to get caught," when she was arrested. Citing only *Dixon v. State*, 27 Md.App. 443, 340 A.2d 396, *cert. denied*, 276 Md. 741 (1975), appellee argues that, because a juror may not impeach his or her own verdict, the court was required to disregard juror Skinner's statements relating her discussion of the case with her husband. We will first address this contention of the appellee.

■ In *Williams v. State*, 204 Md. 55, 102 A.2d 714 (1954), Chief Judge Sobeloff reviewed the question of whether a juror could attest to an improper influence on the jury's deliberations—racial prejudice harbored by the individual jurors. He opined that "[t]he law in Maryland is well settled that a juror cannot be heard to impeach his verdict, whether the jury conduct objected to be misbehavior or mistake." *Id.* at 67, 102 A.2d 714. Judge Sobeloff explained that American courts derived the rule that a juror will not be heard to impeach his verdict from Lord Mansfield's opinion in *Vaise v. Delaval*, 1 Term R. 11 (K.B. 1785).[2] Public policy requires the exclusion of such evi-

---

2. Professor Wigmore writes of the rule's origins:

dence because the alternative "would disclose the secrets of the jury room and afford an opportunity for fraud and perjury." *Id., quoting Brinsfield v. Howeth,* 110 Md. 520, 530, 73 A. 289 (1909).

Other risks sought to be averted, it has been said, are harassment of jurors by disgruntled losing parties; removal of an element of finality from judicial decisions; and through allowing jurors to swear to alleged examples of reprehensible conduct, a decrease in public confidence in the judicial process. In an offer to prove facts nullifying the verdict on a motion for a new trial, the theory for exclusion of the jurors' deliberations during retirement, their expressions, argumented [sic], motives, and beliefs, may, according to Prof. Wigmore, embrace both the Privileged Communications Rule and the Parol Evidence Rule. *Id.* at 67–68, 102 A.2d 714.

Furthermore, he contrasted Lord Mansfield's Rule with the modification of that rule adopted by the Supreme Court in *United States v. Reid,* 53 U.S. (12 How.) 361, 13 L.Ed. 1023 (1851), and *Mattox v. United States,* 146 U.S. 140, 13 S.Ct. 50, 36 L.Ed. 917 (1892). Now known as the "Iowa Rule," from the opinion of the Iowa Supreme Court in *Wright v. Illinois and Mississippi Telegraph Co.,* 20 Iowa 195 (1866), the rule is followed in the federal courts. It allows certain juror testimony in situations in which an "extraneous influence" is alleged to have affected the jury. Under the rule, while a juror generally cannot testify about the mental processes by which the jurors reached their verdict, a juror may testify concerning any mental bias in matters unrelated to the specific issues that the juror was called upon to decide and whether extraneous prejudicial information was improperly brought to the juror's attention. *Rushen v. Spain,* 464 U.S. 114, 121 n. 5, 104 S.Ct.

---

The odd feature of [Lord Mansfield's] doctrine is that it came ... as an innovation upon the prior practice. Having no sound basis in policy (as its modern repudiation now testifies), it had also no basis of precedent.

8 Wigmore, *Evidence,* § 2352 (McNaughton rev. 1961).

453, 457 n. 5, 78 L.Ed. 267 (1983). The distinction between "external" and "internal" influences is presently codified in Federal Rule of Evidence 606(b).[3] *Tanner v. U.S.,* —— U.S. ——, ——, 107 S.Ct. 2739, 2748, 97 L.Ed.2d 90, 106 (1987).

*Williams v. State, supra,* held that under Maryland law the affidavit of a juror is inadmissible as evidence to disclose what took place in the jury room at a hearing on a motion for a new trial. *Christ v. Wempe,* 219 Md. 627, 641, 150 A.2d 918 (1959), subsequently held that such information may not be obtained through interrogation of individual jurors at a hearing on a motion for new trial. While Judge Sobeloff declined to classify the Maryland cases as following the strict Lord Mansfield's Rule, the "Iowa Rule," or some intermediate rule, *Williams v. State, supra* 204 Md. at 72, 102 A.2d 714, subsequent Maryland cases have not deviated from the rule precluding a juror from testifying as to *any* matter that may have affected the verdict. *See Wernsing v. General Motors Corp.,* 298 Md. 406, 411–12, 470 A.2d 802 (1984); *Oxtoby v. McGowan,* 294 Md. 83, 101, 447 A.2d 860 (1982); *Braun v. Ford Motor Co.,* 32 Md.App. 545, 551–54, 363 A.2d 562, *cert. denied,* 278 Md. 716 (1976); *Dixon v. State, supra,* 27 Md.App. at 448, 340 A.2d 396.

---

**3.** Federal Rule of Evidence 606(b) provides:

Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon his or any other juror's mind or emotions as influencing him to assent to or dissent from the verdict or indictment or concerning his mental processes in connection therewith, except that a juror may testify on the question whether extraneous prejudicial information was improperly broght to the jury's attention or whether any outside influence was improperly brought to bear upon any juror. Nor may his affidavit or evidence of any statement by him concerning a matter about which he would be precluded from testifying be received for these purposes.

The Supreme Court has recently opined that such testimony elicited at an evidentiary hearing where an extrinsic influence is alleged to have tainted the deliberations does not detract from, but rather harmonizes with, the weighty government interest in insulating the jury's deliberative process. *Tanner v. U.S.,* —— U.S. ——, 107 S.Ct. 2739, 2747, 97 L.Ed.2d 90, 106 (1987).

But even if we assume that Maryland adheres to the strict application of Lord Mansfield's Rule, an exception to that rule permits the *court* to question individual jurors about matters which may have affected their deliberations before the jury is discharged.

> The reasons for [Lord Mansfield's Rule], namely, the dangers of uncertainty and of tampering with the jurors to procure testimony, disappear in large part if such investigation as may be desired is *made by the judge* and takes place *before the jurors' discharge* and separation. When therefore the jury brings in its verdict, the judge, in his just and usual control of the proceedings, may *refuse to accept it* as final and may require the *jury to retire again* to make the verdict more specific or more clear. This procedure is a traditional part of jury trial. In principle it is equivalent to holding the first utterance of the foreman as tentative and informal only; and even after an initial discharge, the judge may reconvene them nunc pro tunc for making such correction. It is not that the jury adds explanations to the verdict; there *is* no verdict as yet. They retire to restate it and to give it a final form.

8 Wigmore, *Evidence,* § 2350 (McNaughton rev. 1961) (emphasis in original; footnote omitted).

■ Accordingly, the court may examine the jury before it is discharged to ascertain the grounds on which a general verdict is founded. Because the *court* in the case *sub judice* elicited juror Skinner's statements during his interview of the individual jurors immediately following the return of their verdict, juror Skinner's response to the court's question did not run afoul of Lord Mansfield's rule. It was therefore properly received and considered.

■ We begin our review of appellant's assertion with the well-settled proposition that the grant or denial of a motion for a new trial is committed to the sound discretion of the trial judge, whose ruling upon such a motion will not be disturbed on appeal except for the most extraordinary

and compelling reasons. *Mack v. State,* 300 Md. 583, 600, 479 A.2d 1344 (1984); *Treece v. State,* 72 Md.App. 644, 654, 532 A.2d 175 (1987), *cert. granted,* 311 Md. 698, 537 A.2d 262 (1988); *Ellison v. State,* 56 Md.App. 567, 581, 468 A.2d 413 (1983); *Harker v. State,* 55 Md.App. 460, 474, 463 A.2d 288 (1983). "The trial judge's discretion extends to matters concerning juror misconduct or other such irregularity in the conduct of others which may affect the jury." *Walker v. Hall,* 34 Md.App. 571, 591, 369 A.2d 105 (1977). But in the exercise of his or her discretion, the trial judge must account for the fact that due process requires "a jury capable and willing to decide the case solely on the evidence before it, and a trial judge ever watchful to prevent prejudicial occurrences and to determine the effect of such occurrences when they happen." *Smith v. Phillips,* 455 U.S. 209, 217, 102 S.Ct. 940, 946, 71 L.Ed.2d 78 (1982). *See also Irvin v. Dowd,* 366 U.S. 717, 721–22, 81 S.Ct. 1639, 1641–42, 6 L.Ed.2d 751 (1961). The Due Process Clause of the Fourteenth Amendment guarantees accuseds in the state courts the right to be tried by an impartial jury. *Nebraska Press Ass'n v. Stuart,* 427 U.S. 539, 551, 96 S.Ct. 2791, 2799, 49 L.Ed.2d 683 (1976); *Duncan v. Louisiana,* 391 U.S. 145, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968); *Owen v. Duckworth,* 727 F.2d 643, 645 (7th Cir.1984). Therefore, a motion for a mistrial or a new trial because of alleged jury misconduct will be granted if the misconduct was such as to indicate that a fair and impartial trial could not be had under the circumstances. *Cf. Morris v. Wilson,* 74 Md.App. 663, 677, 539 A.2d 1151 (1988).

A private communication between a third party and a deliberating juror raises a serious concern that the juror may reach a verdict on the basis of the matters communicated, rather than the trial evidence. *United States v. Day,* 830 F.2d 1099, 1103 (10th Cir.1987); *Owen v. Duckworth,* 727 F.2d 643, 646 (1984). Addressing this concern, the Supreme Court long ago adopted the rule that private communications between jurors and third persons are absolutely "forbidden" and require the court to order a new trial

"unless their harmlessness is made to appear." *Mattox v. United States,* 146 U.S. 140, 150, 13 S.Ct. 50, 53, 36 L.Ed. 917 (1892). In *Remmer v. United States,* 347 U.S. 227, 229, 74 S.Ct. 450, 451, 98 L.Ed. 654 (1954), the Court developed the standards for determining whether prejudice results from an improper contact with jurors.

> In a criminal case, any private communication, contact, or tampering directly or indirectly, with a juror during a trial about the matter pending before the jury is, for obvious reasons, deemed presumptively prejudicial, if not made in pursuance of known rules of the court and the instructions and directions of the court made during the trial, with full knowledge of the parties. The presumption is not conclusive, but the burden rests heavily upon the Government to establish, after notice to and hearing of the defendant, that such contact with the juror was harmless to the defendant.

Subsequent cases have determined that the *Remmer* requirement of a post-trial evidentiary hearing need not be conducted as a full evidentiary hearing, so long as the inquiries put to the juror are sufficiently detailed to permit the judge to determine whether any prejudice was likely to result from the improper contact. *United States v. Butler,* 822 F.2d 1191, 1196 (D.C.Cir.1987); *United States v. Coleman,* 805 F.2d 474, 481–82 (3rd Cir.1986). But the Supreme Court's more recent decision in *Smith v. Phillips,* 455 U.S. 209, 102 S.Ct. 940, 71 L.Ed.2d 78 (1982), has cast some doubt on *Remmer's* presumption of prejudice arising from any private communication with a juror about a matter pending before the jury.

*Smith v. Phillips, supra,* involved a petition for habeas corpus in which the defendant claimed that juror bias resulted from the fact that one of the jurors applied to the prosecutor's office for a job as an investigator during the defendant's state-court trial. The Court held that, in the circumstances of that case, it would not be proper to impute bias in the verdict or to find a post-trial hearing inadequate as a remedy for the alleged due process violation. 455 U.S.

at 217, 102 S.Ct. at 946. *See Rushen v. Spain, supra,* 464 U.S. at 119 n. 3, 104 S.Ct. at 456 n. 3.

The United States Court of Appeals for the Sixth Circuit, in *United States v. Pennell,* 737 F.2d 521 (6th Cir.1984), *cert. denied,* 469 U.S. 1158, 105 S.Ct. 906, 83 L.Ed.2d 921 (1985), held that *Phillips,* "[i]n essence," reinterpreted *Remmer.* In *Pennell,* five jurors were contacted at their homes during a break in the jury's deliberations by an anonymous telephone caller who exhorted the jurors to convict Pennell. The court held that:

> In light of *Phillips,* the burden of proof rests upon a defendant to demonstrate that unauthorized communications with jurors resulted in actual juror partiality. Prejudice is not to be presumed.

737 F.2d at 532.

Other federal appellate courts have not departed from *Remmer's* statement of the legal standard for evaluating the effect of an improper contact with a juror. *See, e.g., United States v. Butler,* 822 F.2d 1191, 1195–1196 n. 2 (D.C.Cir.1987); *Haley v. Blue Ridge Transfer Co.,* 802 F.2d 1532, 1535–1536 n. 5 (4th Cir.1986); *United States v. Littlefield,* 752 F.2d 1429, 1431–32 (9th Cir.1985); *Owen v. Duckworth, supra,* 727 F.2d at 646. The United States Court of Appeals for the Fourth Circuit distinguished *Phillips* from the improper juror contact issue involved in *Remmer* on the grounds that *Phillips* involved an allegation of intrinsic juror bias, which is subject to revelation during *voir dire. Haley v. Blue Ridge Transfer Co., supra,* 802 F.2d at 1535–36 n. 5.

Maryland appellate courts have not had occasion to decide the legal standards for evaluating the effect of an improper communication between a juror and a person who is unrelated to the judicial proceeding. The standards that have been applied to improper communications between the trial judge and the jury, made outside the defendant's presence, are instructive. Where the record affirmatively shows that a criminal defendant was prejudiced by the improper com-

munications by the trial judge with the jury, that error requires reversal of the conviction. *La Guardia v. State,* 190 Md. 450, 458, 58 A.2d 913 (1948). Also, if the record discloses an improper communication but does not show whether the error prejudiced the defendant, prejudice will be presumed requiring reversal. *Id.* at 458, 58 A.2d 913. But when the record affirmatively shows that a judge's improper communication with the jury out of the presence of the defendant was not prejudicial or had no tendency to influence the verdict of the jury, reversal is not required. *Id.* at 458, 58 A.2d 913; *see also Midgett v. State,* 216 Md. 26, 36–37, 139 A.2d 209 (1958); *Smith v. State,* 66 Md.App. 603, 624, 505 A.2d 564, *cert. denied,* 306 Md. 371, 509 A.2d 134 (1986); *Campbell v. State,* 12 Md.App. 637, 641, 280 A.2d 292 (1971); *Winegan v. State,* 10 Md.App. 196, 203, 268 A.2d 585 (1970). A harmless error standard therefore applies to improper judge/juror communications. *Noble v. State,* 293 Md. 549, 562–63, 446 A.2d 844 (1982).

In *Hitchcock v. State,* 213 Md. 273, 285, 131 A.2d 714 (1957), the Court of Appeals held that a trial court did not abuse its discretion in denying the defendant's motion for a new trial, which was based on the affidavit of a spectator at the trial who had observed two members of the jury engaged in a discussion with the prosecutor during a recess. The Court did not presume that this discussion was prejudicial, but instead affirmed the trial court that the conversation was in any way connected with the case. *Id.* at 285, 131 A.2d 714. But in *Oliver v. State,* 25 Md.App. 647, 650, 334 A.2d 572 (1975), we held that an improper communication between a bailiff and deliberating jurors gave rise to a "spectre of prejudice."

We will assume that the Supreme Court's holding in *Remmer* as to the presumptively prejudical effect of any private communication with a juror concerning a matter pending before the jury remains the law. Nevertheless, we hold that the trial court in the case *sub judice* did not abuse its discretion in denying appellant's motion for a new trial, because the inquiry of the trial court and the juror's re-

sponse thereto effectively overcame the presumption operating in appellant's favor.

We think that *United States v. Day*, 830 F.2d 1099 (10th Cir.1987) is apposite. In *Day*, the defendant alleged that the trial court abused its discretion in denying the defendants' motion for a mistrial, which was based upon an improper jury contact involving a brief conversation which occurred during a trial recess in a rest room between the government's main witness, an F.B.I. agent, and a juror with whom he was acquainted. The F.B.I. agent remarked that the next item of evidence that the juror would hear might put the juror to sleep. That evidence was a tape recording which contained a conversation involving Day, one of the defendants. The defendants alleged that the F.B.I. agent's comments indicated to the juror that he should not focus on defendant Day's remarks because they were not true. The Court of Appeals framed the issue involved in the case as follows:

> The question before us is whether the trial court, armed only with the undisputed content of the conversation, elicited at the hearing, had an adequate basis to find, as a matter of law, that no prejudice resulted. We hold that such is the case.

*Id.* at 1104.

Noting that the F.B.I. agent's comments about the tape could not "be fairly deemed as directed to the truth of any matters contained on the tape," the court concluded that the uncontradicted testimony given by the F.B.I. agent in response to the court's inquiry into the conversation overcame the presumption that the conversation was prejudicial.

We similarly hold that juror Skinner's responses to the questioning of the trial court were sufficient to overcome the presumptively prejudicial effect of her brief discussion of the case with her husband. The entire substance of the improper communication was fully set forth in the record when the court questioned the juror. The conversation consisted of a single question asked by the juror of her

lawyer-husband—why a statement purportedly made by Charlene Hunt was admissible through Officer McCauley despite the fact that it was hearsay—and the husband's reply that the statement was admissible because it was a spontaneous utterance. The juror testified that she did not discuss any other aspect of the case. Her account of her conversation with her husband is not inherently suspect. *Smith v. Phillips, supra,* 455 U.S. at 217 n. 7, 102 S.Ct. at 946 n. 7. The juror's question and the husband's response were not directed to the truth of the statement. Instead, the improper conversation concerned an evidentiary problem that was unrelated to the question of appellant's guilt or innocence. Because the presumption that the improper juror communication was prejudicial was effectively overcome, appellant was not deprived of a fair trial. We therefore hold that the court did not abuse its discretion in denying appellant's motion for a new trial.[4]

---

**4.** The federal appellate courts are in even greater disagreement on the issue of whether the *government* or the *defendant* bears the burden of proof when the problem of an improper juror contact is raised. *United States v. Pennell, supra,* 737 F.2d at 532, holds that the burden of proof rests upon a defendant to demonstrate that an improper juror contact resulted in prejudice, and that the defendant is not assisted by a presumption that the contact was prejudicial. *United States v. Day, supra,* 830 F.2d at 1105, holds that the defendant is aided by a presumption that an improper juror contact was prejudicial, but once the presumption is effectively rebutted, the defendant has the burden of demonstrating actual prejudice. The majority of the federal appellate courts hold that, when a presumption of prejudice arises from an improper juror contact, the government bears the burden of establishing that the improper juror contact was harmless to the defendant. *United States v. Butler, supra,* 822 F.2d at 1196; *Haley v. Blue Ridge Transfer Co., Inc., supra,* 802 F.2d at 1537, *United States v. Littlefield, supra,* 752 F.2d at 1431; *Owen v. Duckworth, supra,* 727 F.2d at 646. These courts conclude that the burden of proof rests on the government in large part because of the problem of proof created by the rule precluding a juror from impeaching his own verdict. *Haley v. Blue Ridge Transfer Co., Inc., supra,* 802 F.2d at 1537. In a recent case involving an emotional outburst by some spectators at a criminal trial in the presence of the jury, the Court of Appeals held that the burden rests on the party moving for a mistrial to establish prejudice. *Flint Gregory Hunt v. State,* 312 Md. 494, 503, 540 A.2d 1125 (1988). We conclude that the evidence in the case *sub judice* was sufficient to establish the harmlessness of the improper conversation beyond a

### Rebuttal Testimony

Officer McCauley testified as a rebuttal witness for the State that Charlene Hunt exclaimed, "I knew we were going to get caught," when the police arrested Ms. Hunt, appellant, and appellant's brother. Appellant contends that the trial court erred in permitting Officer McCauley's testimony because, 1) it did not respond to evidence produced by appellant, and 2) it was hearsay. Appellant's arguments are without merit.

Evidence which explains, or is in direct reply, or is a contradiction of matters brought into the case by the defense is proper rebuttal evidence. *State v. Hepple*, 279 Md. 265, 270, 368 A.2d 445 (1977). Charlene Hunt testified for the defense that she, appellant, and Anthony Eades did not rob Nat Johnson and Coleman Pensor; instead, appellant kept their money after he promised to procure marijuana for them. She further claimed that she did not learn that appellant kept the money until after they parted company with Johnson and Coleman. Officer McCauley's rebuttal testimony was in direct contradiction to Ms. Hunt's version of the facts. It was therefore properly admitted. *Campbell v. State*, 65 Md.App. 498, 508, 501 A.2d 111 (1985), *cert. denied*, 305 Md. 599, 505 A.2d 856 (1986).

The statement was properly admissible under the excited utterance exception to the hearsay rule.

The essence of the excited utterance exception is the inability of the declarant to have reflected on the events about which the statement is concerned. It requires a startling event and a spontaneous statement which is the result of the declarant's reaction to the occurrence.

*Mouzone v. State*, 294 Md. 692, 697, 452 A.2d 661 (1982). The statement, "I knew we were going to get caught," made by Ms. Hunt in reaction to her arrest was properly

---

reasonable doubt. Therefore, assuming that the State had the burden of establishing harmlessness, we hold that the burden was met.

admitted through Officer McCauley under this exception to the hearsay rule.

## Sufficiency of the Evidence

 Finally, appellant argues that the evidence was legally insufficient to establish his criminal agency in the offense with which he was charged. The test we apply to review the sufficiency of the evidence to support a conviction is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *Wildberger v. State,* 74 Md.App. 107, 110, 536 A.2d 718 (1988). A victim's identification of the accused as the perpetrator of the crime is ample evidence to sustain his conviction. *Branch v. State,* 305 Md. 177, 183, 502 A.2d 496 (1986), *quoting Walters v. State,* 242 Md. 235, 218 A.2d 678 (1966). In the case *sub judice,* both Nat Johnson and Coleman Pensor identified appellant at trial as one of the three persons who had robbed them. The jury was not required to believe appellant's contrary version of the facts.

JUDGMENTS AFFIRMED;
COSTS TO BE PAID BY THE APPELLANT.